**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul Stanley KROHN, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William G. HAHN, Defendant-Appellant.**

**Nos. 76–2176, 76–2177.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 23, 1978.

Decided April 3, 1978.

Certiorari Denied June 5, 1978. See 98 S.Ct. 2857.

Joseph F. Dolan, U. S. Atty., Denver, Colo. (Richard S. Vermeire, Asst. U. S. Atty., Denver, Colo.) (Cathlin Donnell, U. S. Atty. (Interim), Denver, Colo., on the brief), for plaintiff-appellee.

Robert M. Vockrodt, Aurora, Colo., for defendant-appellant Krohn.

Daniel J. Sears, Federal Public Defender, Denver, Colo., for defendant-appellant Hahn.

Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendants appeal their convictions and sentences [1] after adverse jury verdicts on a five count indictment for mail fraud in violation of 18 U.S.C. § 1341 (1976).[2] Viewing

---

1. Krohn was sentenced to 5 years' imprisonment for each of counts 1, 2, 3 and 4, to run concurrently. He received a suspended sentence on count 5, and is placed on probation for a period of five years. The probation runs consecutive to the term of imprisonment.

Hahn was sentenced to 179 days' imprisonment for count 1. He received a suspended sentence and is placed on probation for five years on each of counts 2, 3, 4, and 5. Probation on these counts is to run concurrently, but

is to be consecutive to the term of imprisonment under count 1.

2. 18 U.S.C. § 1341 (1976), Frauds and swindles, provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use

the evidence most favorably to the Government as we must in considering these appeals after convictions, *United States v. Twilligear*, 460 F.2d 79, 81–82 (10th Cir.), the record tends to show the following facts.

Sometime in January, 1972, defendants created Rocky Mountain Enterprises of Denver, Inc. (RME). Defendant Hahn held the title of "President" and defendant Krohn held the title of "General Manager and Secretary." (R. VII 37). The purpose of the company was to sell distributorships for wholesale distribution of various products: Wallfrin automotive accessories, Triumph Smokes (a non-nicotine cigarette) and Crown Sporting Goods. RME would then purchase merchandise from these manufacturers and sell it to their distributors.

In order to sell distributorships RME placed ads in newspapers throughout the country. Salesmen trained by RME would follow-up responses to these ads and offer exclusive distributorships to a given territory. After a distributorship was sold, RME "account coordinators" were to come to the territory and secure high-volume locations for the products. RME had the responsibility for finding suitable merchandise locations as well as providing product advertising. Merchandise was to be placed at these locations on consignment, the distributors servicing them.[3] Distributors were to make money through profit on those goods sold at the locations they serviced.

The Government's proof tended to show, *inter alia*, that the defendants had a scheme to defraud the buyers of distributorships in that defendants knew when representations were made to the buyers that those representations were false as to the supply and quality of merchandise, the success of the distributorship business, and the various forms of assistance to marketing of the products which was supposed to be furnished, and that in carrying out the scheme the defendants caused the mails to be used in RME's contacts with the five buyers listed in the five counts of the indictment. The defendants each vigorously contend that they did not engage in such a scheme asserting, *inter alia*, that they made no false representation or any statement about the business which they knew was untrue. Further they maintained in the trial court, and assert on appeal, that the Government's case is fatally defective, primarily because it was based on allegedly inadmissible hearsay statements attributed to RME salesmen and the defendants, in violation of the Confrontation Clause, and on unauthenticated documents erroneously admitted by the trial court.

The evidence will be detailed as necessary in discussing the appellate contentions, to which we now turn.

### I

First, both defendants argue that there is insufficient evidence because their convictions rest on erroneously admitted hearsay, violative of the Confrontation Clause, and on other improper evidence. More specifically, defendants say that the trial court erred in admitting in evidence statements attributed to various representatives of RME. Hahn points particularly to statements by Cole Curtis as related by witness-

any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

The indictment also charged aiding and abetting offenses but the trial court did not submit these charges for consideration by the jury and they are no longer involved.

3. The investment cost to the distributor was a franchise fee which was to be fully secured by the merchandise shipped to him for his locations. Thus, during its sales presentation, RME implicitly represented that the distributorships involved a low risk to the investor.

es claiming to be victims of the scheme. Hahn also attacks admission of testimony relating statements by defendant Krohn and admission of a letter purportedly signed "Bill" for William G. Hahn, and other correspondence. Hahn says that at the time of admission of such evidence, and throughout the trial, no conspiracy or scheme and no agency basis for admission of the evidence was established.

Krohn similarly complains that evidence of hearsay statements by RME employees Charles Morelli and Curtis was improperly admitted without any foundation, that the record showed that Hahn and not Krohn trained sales personnel, including Morelli and Curtis, that there was no proof that Morelli and Curtis were members of a conspiracy or had any knowledge of any illegal purposes of the venture, that numerous hearsay and unauthenticated documents consisting of complaint letters and contracts were admitted, and that no limiting instruction was given at the time of the admission of such evidence as is required by *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593.

■ The main issue underlying these contentions is whether there was sufficient proof to establish that a fraudulent scheme existed and that both defendants participated therein. While the argument is framed as a hearsay and confrontation proposition, actually this is not the problem as to the essential parts of the evidence which are in controversy. The statements and representations complained of were not offered to prove the truth of the matters stated, and indeed the Government says the statements were essentially untrue. Since the Government sought to prove the making of the statements but not the truth of the matters asserted by them, there is no actual hearsay question, *Anderson v. United States*, 417 U.S. 211, 219, 94 S.Ct. 2253, 41 L.Ed.2d 20; see Rule 801(c), F.R.E., nor a confrontation issue. See *Dutton v. Evans*,

400 U.S. 74, 88, 91 S.Ct. 210, 27 L.Ed.2d 213. There is, however, a parallel problem whether these defendants are responsible for the acts and statements of each other as participants in a fraudulent scheme and for the acts and statements of agents or employees of a fraudulent enterprise. Thus we will consider cases speaking in those terms, and also cases applying similar principles as hearsay rules and exceptions where a conspiracy or an unlawful enterprise of two or more parties is involved.

■ The governing rules are well settled. Under principles similar to hearsay rules applied in conspiracy cases,[4] participants in a multi-party mail fraud scheme have been held responsible for communications which other participants caused to be mailed in execution of the scheme, although a conspiracy was not charged. *United States v. Joyce*, 499 F.2d 9, 16–17 (7th Cir.); *United States v. AMREP Corp.*, 560 F.2d 539, 545 (2d Cir.), (cert. pending). Furthermore, statements and representations by salesmen which are expressly or impliedly authorized or ratified by the person against whom they are offered may be admitted, although the salesmen are not alleged to be parties to the fraudulent scheme. See *Beck v. United States*, 305 F.2d 595, 600–601 (10th Cir.), cert. denied, 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed.2d 123; *United States v. AMREP Corp.*, supra, 560 F.2d at 545. And the authorization by the defendant of such statements by a salesman may be found in the circumstances of the particular case, in the scope of the plan or scheme, or from other pertinent facts. *Beck v. United States*, supra, 305 F.2d at 600; *Fabian v. United States*, 358 F.2d 187, 191–92 (8th Cir.), cert. denied, 385 U.S. 821, 87 S.Ct. 46, 17 L.Ed.2d 58.

■ It is often difficult to prove fraudulent intent by direct evidence and it must be inferred in such cases from a pattern of conduct or a series of acts, aptly designated as badges of fraud. *United States v.*

---

**4.** See *United States v. Nixon*, 418 U.S. 683, 701, 94 S.Ct. 3090, 41 L.Ed.2d 1039; Rule 801(d)(2)(E), F.R.E.; cf. *Lowther v. United States*, 455 F.2d 657, 665 (10th Cir.), cert. denied, 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102 (prosecution of defendants for a fraudulent securities scheme where a conspiracy count was dismissed prior to trial).

*AMREP Corp.*, supra, 560 F.2d at 546. The nature of a scheme to defraud by false representations may be shown by accumulated evidence of action of agents and subsequent conduct and correspondence of the company involved demonstrating a course of business, an important feature of which is systematic misrepresentation by agents. *Beck v. United States*, supra, 305 F.2d at 600–601. But for such proof of the statements and acts of other participants in the scheme or of agents acting for them to be admissible against a particular defendant, there must be independent evidence of his *own* participation establishing that he was a member of the conspiracy or scheme. See *Tripp v. United States*, 295 F.2d 418, 422 (10th Cir.); *United States v. AMREP Corp.*, supra, 560 F.2d at 545.

■ However, the order of proof is within the sound discretion of the trial judge. Evidence of the acts and statements of other participants in the fraudulent enterprise or their agents may be admitted prior to demonstrating participation in the scheme by the objecting defendant, so long as the foundation is subsequently laid. *Beckwith v. United States*, 367 F.2d 458, 460 (10th Cir.). In the final charge the trial court did clearly instruct the jury here as to the required foundation for consideration of such evidence against the defendants (R. IX, 10):[5]

> So, if a defendant or any other person with understanding of the unlawful character of a plan, knowingly encourages, advises, or assists for the purpose of the furthering of the undertaking or scheme, he thereby becomes a wilful participant.

In determining whether an unlawful scheme or plan existed, the jury should consider the actions and declarations of all of the alleged participants. However, in determining whether a particular defendant was a member of such plan or scheme, if any, the jury should consider only his actions and statements. He cannot be bound by the actions or declarations of other participants until it is established that a common plan or scheme existed, and that he was one of its members.

■ We must consider the defendants' challenge to the sufficiency of the proof in light of these principles we have outlined. In reviewing the record we are bound to view the evidence in the light most favorable to the Government to ascertain if there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, from which the jury could find the defendants guilty beyond a reasonable doubt. *United States v. Twilligear*, supra, 460 F.2d at 81–82.

■ As to the existence of a fraudulent scheme, the proof favorable to the government tended to show these circumstances: Krohn and Hahn agreed to begin the business in January, 1972, on a 50–50 basis. Several prospective buyers of distributorships responded to classified ads placed in their local papers at Krohn's direction. Shortly thereafter Hahn,[6] or another RME representative,[7] visited them and sold them distributorships for designated territories to handle one of the three products—Triumph

---

**5.** We do not agree with the contention made under *Lutwak v. United States*, supra, 344 U.S. at 619, 73 S.Ct. 481, that the absence of a limiting instruction at the time of admission of proof of statements of representatives of RME and of the co-defendant was reversible error here. The statement in *Lutwak* which is relied on dealt with proof that was *never* admissible in the trial as to a given defendant. Here the evidence was conditionally admissible and we feel that the final charge was sufficient in stating the conditions which had to be satisfied for evidence of the acts of others to be considered in deciding the guilt of the defendants.

We agree that it is preferable to give some cautionary instruction at the time of admission of the proof, with further instructions in the final charge, explaining the conditions to be met before such evidence may be considered. *E. g., Beckwith v. United States*, supra, 367 F.2d at 460.

**6.** See, *e. g.*, R. II 7; R. III 19; R. V 17; R. VI 45, 74; R. VII 12; R. VIII 11.

**7.** See *e. g.*, R. III 55, 120, 159; R. IV 33, 59; R. VI 9, 104.

Smokes, Wallfrin Auto Accessories, or Crown Sporting Goods.[8]

If the prospect lived in "the west" he was told the goods were selling well in "the east" and that the company was expanding westward, and vice versa. The prospects were told that the products would be delivered within a few weeks, but in no instance were the deliveries forthcoming as represented. After signing distributorship contracts some received partial shipments, but many distributors never received any merchandise.[9] Furthermore merchandise which was shipped was often of unsatisfactory quality—"foul," "repugnant" or "wormy" cigarettes; auto accessories and sporting goods described as "junk," contrary to representations made. The several distributors who testified said that they were unable to attain profits as represented to them. Moreover, there was proof that Krohn and Hahn each made false and lulling responses to distributors' complaints, and failed to make any response to some such complaints, which circumstances are probative of a fraudulent scheme. See *United States v. AMREP Corp.*, supra, 560 F.2d at 545–46; *Anderson v. United States*, 369 F.2d 11, 15 (8th Cir.), cert. denied, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136.

▮ This proof, and other evidence we need not detail, amply supports a finding beyond a reasonable doubt that a fraudulent scheme existed and was widely carried on, despite denials by Krohn and the salesman, Morelli, and some detracting portions of the other testimony favoring the defendants.

We must also consider whether there was sufficient evidence, independent of statements by others, establishing on the basis of each defendants' own actions and statements, that he participated in the scheme or conspiracy. See *Tripp v. United States*, supra, 295 F.2d at 422.

We note that Krohn testified that he and Hahn agreed in January, 1972, to set up the business on a 50–50 basis. Krohn said he had experience in distributorships and Hahn in sales. (R. VIII 62). There was testimony by others favorable to the Government tending to show that Krohn approved all the ads which were placed, that he participated in the sale of distributorships, that he made representations as to how well the product was selling elsewhere, that he made profit projections,[10] that he took part in hiring some salesmen and trained one of them, Mr. Kaye,[11] and that he received and replied to customer complaints.[12]

As to Hahn, there was also testimony favorable to the Government tending to show that Hahn had substantial personal involvement in the enterprise: that he made several sales presentations to prospective distributors, making misrepresentations such as have been mentioned, that he signed contracts for RME with distributors,[13] that he received and responded to customer complaints, and that he took part in hiring and trained one salesman, Mr. Morelli.[14]

▮ There was other proof of similar and joint actions by Krohn and Hahn. Both Hahn and Krohn used corporate funds

---

8. Where a scheme to defraud includes making sales by means of certain false representations conveyed through salesmen, proof of the same misrepresentations being made at widely different places to different persons by numerous agents in the same period tends to prove that the scheme existed and that the particular salesmen were carrying it on. *Reistroffer v. United States*, 258 F.2d 379, 387 (8th Cir.).

9. See *e. g.*, R. II 32, 37; R. III 7, 164; R. IV 15, 44; 69–70; R. VI 18, 117; R. VII 18; R. VIII 18, 31.

10. See, *e. g.*, R. VII 70; R. VI 111–13; R. VIII 8; R. III 72–74, 133–34; R. IV 42–44; R. VI 53–55, 79–80.

11. See, *e. g.*, R. III 44; R. V 144–47, 156–57; R. VIII 55, 91.

12. See, *e. g.*, R. III 139–140; R. VI 85; R. VIII 175.

13. See, *e. g.*, R. II 7–8, 12; R. III 21–22, 133; R. V 17–20; R. VI 45–51, 72–76; R. VII 12–15; R. VIII 11–12.

14. See, *e. g.*, R. III 44–45, 80, 84–85, 139–143; R. VI 84–85; R. VIII 55–57.

to pay their personal living expenses, which is probative of the existence of a fraudulent scheme. *United States v. Brickey*, 426 F.2d 680, 686 (8th Cir.), cert. denied, 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57. Company checks required the signatures of both defendants. We conclude that there was sufficient substantial proof of acts and statements by each defendant to permit an inference, beyond a reasonable doubt, of their active participation in the fraudulent scheme.

■ Lastly, we note that there is no contention that the proof of use of the mails was not sufficient. We are satisfied the proof was adequate in this respect on each of the five counts.[15]

In sum, we are satisfied that the record amply supports the convictions of both defendants on the five counts under the proper standard.

## II

Second, both defendants claim error in the admission of a racial remark attributed to defendant Hahn. There was an objection by Hahn before admission of this testimony and again when a motion for a mistrial was made. The objection and motion were overruled and the evidence was admitted with no admonition directed to it. On appeal Hahn strenuously renews his claim of prejudice and Krohn also says that prejudicial error occurred, although he did not so object at trial.

The testimony in question was elicited from Ms. Forsha, a secretary at RME (R. VII 47):

Q. Did Mr. Hahn ever refer to any of the distributors?

A. Yes. I recall one specific instance.

Q. What was that specific instance?

A. He had come back from Detroit from making a sale to a Mr. Herman Hodo, and then at that time he told me how enthused—

MR. SEARS: Your Honor, I don't know what to expect here, but I am

contemplating the answer could be highly prejudicial and inflammatory.

THE COURT: You may answer.

MR. VERMEIRE: Thank you, Your Honor.

BY MR. VERMEIRE:

Q. What did he state to you at this time, Ms. Forsha?

A. He was telling me how enthused he was and concluded the remarks by referring to him as a "poor Black bastard."

■ The remark did carry some potential for prejudice against Hahn, and perhaps it could have had some effect on the jury's attitude toward Krohn. Moreover any appeal to racial prejudice is a foul blow which must be rejected by the courts. *United States v. Grey*, 422 F.2d 1043, 1046 (6th Cir.), cert. denied, 401 U.S. 967, 91 S.Ct. 380, 27 L.Ed.2d 387. We do not however view the Government's introduction of this testimony as being improperly motivated. The remark was probative of Hahn's intent and of a state of mind indicating that he knew that the distributor had been duped. The evidence was thus relevant and, on balance, we cannot say that its admission was error. Rule 403, F.R.E., provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, *inter alia*. This determination is within the sound discretion of the trial judge. *United States v. Nolan*, 551 F.2d 266, 271 (10th Cir.), cert. denied, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191. We do not feel there was an abuse of discretion here.

## III

Both defendants claim error in the denial of their pretrial motions for a severance under Rule 14, F.R.Crim.P., for relief from prejudicial joinder.

■ More specifically Krohn argues that he was prejudiced by the joint trial because statements made by Hahn were

---

**15.** The proof on use of the mails appears in the record as follows: for count 1, R. V 25; count 2, R. VI 8–10; count 3, R. II 26; count 4, R. VI 102–103; count 5, R. VIII 6.

admitted against him although Hahn did not testify, and thus Krohn was denied confrontation. However, we have held that the statements were properly admitted against both defendants since a sufficient foundation was laid that a fraudulent scheme existed and that, as shown by independent evidence of acts by both defendants, both participated in that scheme.[16] In view of this, a severance would have made no difference since the statements attributed to Hahn would still have been admissible in separate trials. *E. g., United States v. Kinard*, Nos. 75–1066 and 1067, p. 12 (10th Cir., 7/14/76) (unpublished); accord, *United States v. Williamson*, 482 F.2d 508, 511 (5th Cir.).[17]

Defendant Hahn contends that he was prejudiced by the denial of severance in that he was unable to cross-examine Curtis, whose statements to distributors as an RME representative were admitted although he was not present to testify. The statements were clearly admissible under the principles we have discussed and Hahn fails to demonstrate how their admissibility would have been affected by a severance.

■ In sum, the joinder of defendants was proper under Rule 8(b), F.R.Crim.P., since the defendants were alleged to have participated in the same series of acts or transactions. Relief from allegedly prejudicial joinder under Rule 14 was discretionary, *Lowther v. United States*, supra, 455 F.2d at 664, and we find no abuse of discretion as to either defendant.

## IV

Defendant Krohn claims that there was error in the denial of his pre-trial motion for a continuance which left his appointed counsel inadequate time to prepare for trial.

Counsel was appointed for Krohn by a magistrate on September 27, 1976, the attorney not then being present. The attorney first appeared at Krohn's arraignment on September 30. He filed pre-trial motions on October 8, including the motion for a continuance which was denied on October 12. A considerable volume of documents was furnished to him that day by the prosecuting attorney. Krohn was in jail in Denver during this period and his counsel argues that his incarceration made trial preparation difficult. Trial began on October 18. We note that the Government did have a lengthy time to prepare and Hahn had over a month and a half for preparation of his defense.

■ We agree that preparation for this five-day trial required considerable effort. Nevertheless, no prejudice from the denial of the continuance is shown by Krohn. He did have over two weeks for preparation, and the documents were furnished six days before trial. Moreover, a vigorous defense was presented. We are not persuaded there was an abuse of the discretion which the trial court has in ruling on a continuance. *United States v. Evans*, 542 F.2d 805, 814 (10th Cir.), cert. denied, 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550.

## V

Lastly, defendant Hahn claims that the trial court erred in including Krohn in the same theory of defense instruction with Hahn. Hahn says that his defense and Krohn's were antagonistic, that Hahn's defense was based on lack of participation in a scheme with Krohn, that Hahn proved hostility between them and a lack of any real status of Hahn in RME, and that putting Hahn in a theory of defense instruction with Krohn—who may have been shown to be more culpable—was prejudicial.

---

**16.** As noted earlier we are satisfied that the confrontation and hearsay arguments are without merit.

**17.** Krohn also says he was prejudiced by the joint trial because he had to defend against an uncharged conspiracy with inadequate time for preparation. We feel there was no error in charging a fraudulent scheme without alleging a conspiracy and, as discussed below, no prejudice is shown to have resulted from the time limitations on Krohn's preparation for trial.

We have examined this instruction [18] in conjunction with the entire charge which must be considered. Immediately following the challenged instruction the trial court clearly told the jury to give separate personal consideration to the case of each individual defendant. We conclude that the general statement in the instruction quoted, see note 18, and the charge as a whole, fairly submitted the position of both defendants.

The remaining arguments of the defendants have been considered but are without merit and require no further discussion. Accordingly, the judgments should be affirmed.

We wish to say that these appeals have been ably briefed and argued for all the parties. The briefs were most helpful, being very thoroughly annotated to the record in accord with Rule 28(a) and (b), F.R.A.P.

AFFIRMED.

18. The portion of the instructions in question reads as follows (R. IX, 13):

Now, it is the position of each of the defendants in this case that at no time did he make any statements, representations, or promises that he then knew to be false or fraudulent. It is the further position of each of the defendants that any sales representations or promises made were made with a good faith belief that they would be carried out.