**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Wilford R. GIBSON,
Defendant-Appellant.**

No. 81-1450.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 1982.

Decided Oct. 19, 1982.

Rehearing Denied Dec. 20, 1982.

Michael Tryon, McGroder, Pearlstein, Peppler & Tryon, Phoenix, Ariz., for defendant-appellant.

John D. Lyons, Jr., Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before KENNEDY, POOLE and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Wilford R. Gibson was found guilty of violating 18 U.S.C. §§ 1341, 1343 and 2314 (1976)—respectively, mail fraud, wire fraud, and inducing people to travel in interstate commerce for purposes of fraud. He asserts various errors. We affirm his conviction.

### Background and Proceedings

In 1973, defendant incorporated Gibson Marketing International, Inc. (GMI), named himself president and chairman of that entity, and retained its entire capital stock. From its Phoenix, Arizona headquarters, GMI began a business of selling franchises and franchise distributorship rights ("area distributorships") to fast food restaurants which it called either "Burgher Haus" or "Kelly's Basket."

GMI's selling procedure was as follows. The company placed advertisements in newspapers and certain circulars for single unit franchises. Prospective investors dialed the toll free number printed in the ads and received an invitation to come to the Phoenix headquarters for a "personal interview." At these "personal interviews," GMI salesmen, sometimes including Gibson, urged investors to purchase "area distributorships" rather than the less expensive, single unit franchises. GMI personnel also outlined the "Burgher Haus" and/or "Kelly's Basket" programs. They promised that GMI would provide certain business services including personnel training, local advertising, site location and approvals and discounted national material purchasing accounts. Certain investors were treated to characterizations of "Burgher Haus" as "the next McDonalds." At the end of these meetings, GMI persuaded investors to leave a $1,000 earnest money deposit to secure their distributorships or franchises. Investors forwarded the balance due within a few weeks.

Unfortunately, GMI did not provide certain of the promised business services. For example, in the course of its "site approval" service, for which it charged some investors a $1,000 fee, GMI approved a piece of unimproved underwater swamp land submitted as a test by a wary New York investor. Advertisements promised by GMI to franchisees and area distributors did not appear in local markets. Only two national purchasing accounts were opened. The personnel training program lasted roughly three days, as compared to the eight-week period

at another fast food chain. In addition, the evidence showed that Gibson spent substantial amounts of GMI's money in various Las Vegas gambling spots. From Las Vegas, he telephoned GMI's bookkeeper who transferred corporate funds to his gambling account. At one time, he had a $500,000 loan outstanding from the company. Investors testified that they received no response to their telephone calls and letters to Gibson. There was evidence that Gibson instructed GMI personnel to convey false information to complaining investors.

Gibson does not question the fact that he knowingly caused the mails and wires to be used in GMI's contacts with the investors listed in the indictment. A scheme to defraud and knowing use of the mails or wires are the essential elements of the section 1341 and 1343 crimes.

On September 7, 1978, a grand jury indicted GMI and Gibson. The trial ended in a mistrial in August, 1979, when, after seven days of deliberation, the jury remained deadlocked. Before retrial, in an unpublished memorandum disposition, we affirmed the district court's denial of Gibson's motion to dismiss the indictment on double jeopardy grounds. In the second trial, the jury convicted Gibson and GMI on 14 of 15 counts in the indictment. The district court entered a judgment and sentence from which Gibson appeals.

### The Hearsay Argument

■ Gibson contends that the district court erred in admitting the testimony of investors regarding statements made by GMI's employees/salesmen. Gibson argues that the testimony was hearsay as to him since the trial court failed to make a preliminary finding either that (a) Gibson had authorized the statements, or (b) he was present when the statements were made. Gibson also claims that the admission of these "hearsay" statements violated his confrontation clause rights. We reject both arguments.

The Federal Rules of Evidence define hearsay as: "[A] statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The government argues that the disputed testimony was not "offered in evidence to prove the truth of the matter asserted."

In their testimony, the investors related their discussions with GMI personnel. One witness testified that Gibson's brother, a GMI employee, told her that there were over 80 "Burgher Haus" restaurants in operation. Another witness said a GMI employee told him that GMI would finance 80% of his building and equipment costs. Other witnesses related assurances from GMI salesmen and officials regarding, *inter alia,* GMI's financial assets, the allegedly low failure rate of the restaurants, and the projected financial return on a franchise investment.

The investors' testimony was offered to prove the *existence* of a scheme; the statements were not offered for their truthfulness. The purpose of the testimony was solely to establish the fact that the salesmen and employees had made the statements. That fact was relevant to support the government's allegation that a scheme existed.[1]

Other courts have found similar statements to be non-hearsay. In *United States v. Krohn,* 573 F.2d 1382 (10th Cir.) *cert. denied,* 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792 (1978) the Tenth Circuit held that, in a mail fraud prosecution, the admission of conversations between alleged victims and participants in the scheme did not raise an "actual hearsay question," *id.* at 1386, because the testimony was not offered for its veracity. The Fifth Circuit applied similar reasoning to reach the same result in *United States v. Toney,* 605 F.2d 200, 207 (5th Cir. 1979) *cert. denied,* 444 U.S. 1090,

---

1. Ultimately of course, the truth or falsity of the statements was important to the outcome of the case. However, the fact that the statements were made was not used to prove the truth of the content of the statements. Instead, the government sought to show their falsity through independent evidence.

100 S.Ct. 1055, 62 L.Ed.2d 779 (1980). The commentators support this construction of the rule.[2]

We hold that these statements were not hearsay and did not violate Gibson's confrontation clause rights.[3] Moreover, even if the testimony did fall within the hearsay definition, it would be admissible under either Rule 801(d)(2)(D) (statements by an agent) or Rule 801(d)(2)(E) (statements by a co-conspirator). *See United States v. Federbush,* 625 F.2d 246, 253–54 (9th Cir. 1980); *cf. United States v. Papia,* 560 F.2d 827, 836 n.3 (7th Cir. 1977) (admitting such statements under Rule 801(d)(2)(E)).

■ The more important question is whether the statements made by GMI's salesmen were admissible to show Gibson's participation in, and intent regarding, the scheme to defraud these investors.

The Second, Fifth and Tenth Circuits have considered the issue of the admissibility of similar testimony. In the leading case, *United States v. AMREP Corp.,* 560 F.2d 539 (2d Cir. 1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 731, 54 L.Ed.2d 759 (1978), the Second Circuit held that statements of salesmen could be admitted against corporate officers charged with engaging in a business fraud scheme even if the salesmen were not proven to be knowing participants in the fraudulent scheme. The court said:

> [W]here, as here, the proof shows that corporate officers participated in setting up a fraudulent sales program, trained and instructed the salesmen, prepared sales pitches widely and consistently used, and monitored the results thereof, the statements and representations made by the sales representatives in furtherance

of the scheme are admissible against the officers. This is so, even though the salesmen themselves are not participants in the fraudulent scheme.

*Id.* at 545 (citations omitted). Similarly, in *Krohn,* the Tenth Circuit held that:

> [t]he nature of a scheme to defraud by false representations may be shown by accumulated evidence of action of agents and subsequent conduct and correspondence of the company involved demonstrating a course of business, an important feature of which is systematic misrepresentation by agents.

573 F.2d at 1387 (citation omitted). The Second Circuit's reasoning was also followed by the Fifth Circuit in *Toney,* 605 F.2d at 207 (salesmen's statements admissible to show "that there existed a scheme to hype the product in a certain prescribed manner").

■ We find the reasoning of the other circuits persuasive and adopt it here. We note that a corporate officer cannot be convicted on the basis of the statement of *any* salesman; the prosecution must show that the corporate officer "expressly or impliedly authorized or ratified" the representations. *Krohn,* 573 F.2d at 1386; *cf. Toney,* 605 F.2d at 208 (proof that defendant was an "active and knowing" participant in the scheme is sufficient). The authorization may be found from the scope of the scheme or the facts and circumstances of the particular case. *Krohn,* 573 F.2d at 1386.[4]

Viewing the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), we find evidence in the record that Gibson authorized and rati-

---

**2.** *See e.g.,* 4 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 801(c)[01] (1981); C. McCormick, *Handbook of the Law of Evidence,* § 246 (2nd ed. 1972).

**3.** *See Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Krohn* at 1386 (*citing Dutton* ).

**4.** Contrary to Gibson's contention, the showing of an officer's authorization need not precede the offer of the statements. *See Beckwith v. United States,* 367 F.2d 458, 460 (10th Cir.

1966) (allowing the authorization showing to be made after the offer of the statements).

For this reason, Gibson errs in relying on *United States v. Fielding,* 630 F.2d 1357 (9th Cir. 1980) for the proposition that the authorization showing must precede the offer of the statements. *Fielding* does not establish an order of proof requirement. The order of proof is within the discretion of the trial judge. *Krohn,* 573 F.2d at 1387.

fied the making of these statements. There is evidence that he formed GMI's sales strategy, instructed salesmen and monitored their progress. Following *AMREP, Krohn,* and *Toney,* we hold that the salesmen's statements were admissible against Gibson.

### Sufficiency of the Evidence

Gibson's one paragraph argument that the evidence in the record is insufficient to support his conviction refers the reader to the section of his brief where he argues that the salesmen's and employees' statements should have been excluded under the hearsay rule. Since we reject his hearsay argument and affirm the relevance and admissibility of that evidence, we also reject Gibson's argument as to the sufficiency of the evidence.

### Convictions Under 18 U.S.C. § 2314

Gibson argues that the district court erred in refusing to grant his motion for a judgment of acquittal on the counts alleging interstate transportation of property obtained by fraud in violation of 18 U.S.C. § 2314 (1976). He says that the persons identified in the amended indictment left earnest money deposits of less than $5,000, that the $5,000 element of a section 2314 charge could not have been shown, and therefore that a judgment of acquittal should have been entered.[5]

■■ We agree with the Second Circuit's statement that "[t]here is no language in the [statute] which requires that the victim actually be deprived of any property at all—the scheme or artifice need only induce the travel not the loot." *United States v. Benson,* 548 F.2d 42, 46 (2d Cir.) *cert. denied,* 431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed.2d 257 (1977). Thus the section 2314 crime is causing interstate transportation of the *investor* with the intent to defraud him of money or property of a value of more than $5,000. Because the evidence showed that Gibson knowingly caused these investors to travel interstate, and since the franchise and area distributorship rights cost more than $5,000, we affirm his conviction under section 2314.

### Prosecutorial Misconduct

Gibson argues that the prosecutor improperly vouched for certain evidence in violation of the rule of *United States v. Roberts,* 618 F.2d 530 (9th Cir.) *cert. denied,* 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1980). We do not agree.

■ *Roberts* described two types of improper vouching. First, the prosecutor may not place the prestige of the government behind a prosecution witness. Second, the prosecutor may not indicate or imply that information not actually presented to the jury supports a witness's testimony. *Id.* at 533.

■■ Gibson quotes several examples of "improper vouching." We need discuss only two. Gibson's principal objections are to the prosecutor's statements set forth below.[6] We find these objections without

---

**5.** In relevant part, the statute provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more . . . .
>
> . . .
>
> Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 2314 (1976).

**6.** The relevant quoted examples are:

> "Then there will be some direct evidence. That is things that were said by G.M.I. employees, things said by Mr. Gibson which are direct evidence, in my view, in the view of the government, direct evidence of the state of mind of Mr. Gibson and G.M.I. to the extent that a corporation can have a state of mind, the employees of G.M.I., certainly the state of mind of Mr. Gibson, that shows that, in his mind, he knew what he was doing, he intended all along to take this money for himself, not to do what he promised, not to tell the truth about what was going on, and intentionally defrauding these people for the purpose of his own personal gain."
>
> \*    \*  .  \*    \*    \*    \*

merit. A prosecutor may properly distinguish direct from circumstantial evidence without violating the vouching rule. Also, where there are a large number of witnesses, a prosecutor may help the jury recall the particular witness whose testimony he is discussing by referring to the witness's age, occupation or other distinguishing characteristic (*e.g.,* "disabled veteran"). We find no improper vouching or other impropriety in the prosecutor's statement that we have set forth; nor does any other part of the prosecutor's argument, objected to by Gibson, violate the vouching rule.

■ Gibson also objects to the prosecutor's characterization of several GMI investors as "victims" although he cites no case disapproving the usage. Because of the losses incurred by these investors, the prosecutor's use of the word "victim" was fair comment on the evidence, *see United States v. Martinez,* 616 F.2d 185, 187 (5th Cir. 1980), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981).

Gibson's other prosecutorial misconduct assertions also lack merit. For example, that a witness was allowed to give his occupation as a "Mormon missionary" was not error. Preliminary testimony as to any witness's occupation is ordinarily proper. Nor do we find any indication that the prosecution violated the district judge's order against introducing evidence of certain investors' personal bankruptcies, mortgages or loss of homes resulting from their investments in GMI.

■ The evidence of GMI checks written against insufficient funds was relevant to show GMI's thin capitalization, and Gibson's intent to deceive his investors. These facts were related to the fraud charges in the indictment and therefore the case cited by Gibson, *United States v. McFayden-Snider,* 552 F.2d 1178 (6th Cir. 1977) *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978) (excluding bad check evidence unrelated to the fraud charged in the indictment), does not support his argument. In

fact, *McFayden approved* the admission of bad check evidence related to the fraud charged in the indictment. Gibson cites no case or rationale for his contention that the prosecutor should not have argued this "bad check" evidence to the jury.

■ The evidence of GMI's dealings with certain dissatisfied creditors, including the Internal Revenue Service, was relevant to show intent and knowledge as contemplated by Rule 404(b). We cannot agree with Gibson that the probative value of this evidence is "substantially outweighed by the danger of unfair prejudice . . . ." Fed. R.Evid. 403. Gibson's other claims of unfair prejudice similarly lack merit.

We consider all these misconduct arguments under a "plain error" standard of review because Gibson failed to preserve the issues for appeal by objecting at trial. There is no indication that a "clear miscarriage of justice" is presented here or that "the integrity and reputation of the judicial process" may be affected. *United States v. Berry,* 627 F.2d 193, 199 (9th Cir. 1980) *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981) (quoting *United States v. Segna,* 555 F.2d 226, 231 (9th Cir. 1977)). The prosecutor's actions, even were they erroneous, could not be characterized as highly prejudicial error affecting substantial rights. *United States v. Giese,* 597 F.2d 1170, 1198–1200 (9th Cir.) *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). Accordingly, we hold that neither any conduct of the prosecutor nor the admission of any evidence, complained of on appeal, constitutes plain error.

*Effective Assistance of Counsel*

For his final argument, Gibson lists 19 instances where his trial counsel failed to object or move to strike certain testimony. He asserts that these failures constitute a denial of effective assistance of counsel in violation of the sixth amendment.

■ The sixth amendment requires that persons accused of crimes be represent-

"Tom Clay was the second witness, I think we had on in the government's case. Tom Clay was the actor who was also a disabled veteran."

ed by reasonably competent and effective counsel. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). That standard means counsel within the range of competence demanded of criminal attorneys in reasonably difficult cases. *Id.* In *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir. 1978) (en banc) *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979), we held that to prevail on an ineffective assistance of counsel claim, an accused must show that counsel's errors prejudiced the defense. Gibson has neither made nor attempted any such showing. Accordingly, we reject his contention. *See Hall v. Sumner,* 682 F.2d 786, 789 (9th Cir. 1982).

For the reasons stated, the judgment of the trial court is AFFIRMED.