**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Leland Max HUFF, John C. Huff, Rick A. Huff, John M. Huff, James F. Nierstheimer, Defendants-Appellants.**

**Nos. 81–2517 to 81–2520 and 81–2522.**

United States Court of Appeals,
Tenth Circuit.

Jan. 17, 1983.

Rehearing Denied March 7, 1983.

Certiorari Denied May 16, 23, 1983.
See 103 S.Ct. 2107, 2127.

Jane S. Hazen, Denver, Colo. (Robert G. Heiserman, Denver, Colo., with her on the brief), for defendant-appellant Leland Max Huff.

Edward W. Nottingham, Denver, Colo. (Andrew W. Loewi, with him on the brief), for defendants-appellants John C. Huff, Rick A. Huff, John M. Huff and James F. Nierstheimer.

Gerald J. Rafferty, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Robert T. McAllister, Asst. U.S. Atty., Denver, Colo., with him on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and BREITENSTEIN and SEYMOUR, Circuit Judges.

SETH, Chief Judge.

The defendants appeal their convictions on five counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342. The indictment charged that the defendants engaged in a scheme to defraud customers of Interstate Business Marketing, Inc. Defendant Leland Max Huff incorporated Interstate and was its first president. His sons, John M. Huff and Rick Huff, were officers of the company and trained some of its salesmen. Defendant John C. Huff is not related to the other Huffs; both he and defendant James Nierstheimer were salesmen for Interstate.

The evidence shows that Interstate solicited by means of mass mailings business owners in the West and Midwest that might be interested in selling their businesses. Typically an owner would return a card to Interstate acknowledging that he was interested in selling his business. An Interstate salesman would then go out and call on the business owner. The salesman would explain that Interstate had numerous qualified buyers that were interested in purchasing businesses and would undertake to match the seller's business with buyers who might be interested in purchasing that kind of business in that location.

Interstate placed advertisements in magazines and newspapers stating little more than that it had a large number of businesses for sale and giving an address to which a buyer could write for further information. If a response was received, the prospective buyer was then sent a simple questionnaire asking the general type of business he was interested in operating, his general geographic preference, and the approximate price he was willing to pay. The buyers were then assigned a code number and a computer would match them with every listed business falling within broad categories. The prospective buyers were then sent a xeroxed brochure prepared by Interstate describing each business to which they had been matched, and were advised if interested to contact the sellers directly. The would-be sellers received a list of potential buyers to whom their businesses had been matched, and were advised that the buyers that were interested would contact them. As a practical matter, the listing provided by Interstate made it difficult for the sellers to contact the buyers. In any event, the buyers and the sellers were then to arrange the sale of the business without further assistance from Interstate.

Interstate charged the sellers a nonrefundable fee at the outset for its services, and negotiated a contract with them which provided that the sellers would pay an additional fee if they were to sell their businesses to buyers referred by Interstate. The amount of the fee charged by Interstate was directly related to the asking price of the business.

The indictment returned against the defendants charged that the enterprise failed to qualify its buyers before entering their names into the computer as it had represented to potential sellers, failed to update its buyer list, exaggerated the number and quality of potential buyers, falsely claimed that it would spend hundreds of dollars to advertise individually the seller's business,

and falsely represented that Interstate was frequently successful in securing a buyer for a client's business. The evidence showed that in eight years of operation Interstate had been responsible for the sale of only one business while taking in over four million dollars from over two thousand clients. The jury returned guilty verdicts on all counts of mail fraud against all the defendants. The evidence was sufficient to support the verdict.

The defendants raise two issues on appeal. The first is whether the trial court erred in permitting the jury to hear testimony as to acts and statements of all of the defendants prior to making a determination that there was sufficient evidence of a common scheme. The second issue is whether the trial court erred in failing to sever the trials of the defendants.

The defendants assert that the trial court erred in admitting the testimony of some of Interstate's clients prior to establishing the defendants' relationship to each other and to the enterprise. They urge that in a multiple defendant trial in which a common scheme is alleged, if evidence is admitted without distinction as to which defendant or defendants it may be considered, and no scheme common to all defendants is established, a jury might rely on evidence which should only be attributed to certain of the defendants in its consideration of the case against all of the defendants.

In the case before us, the trial court admitted testimony at the outset from Interstate clients who described in detail their dealings with particular defendants. The trial court gave repeated admonitions to the jury that it should consider as to a defendant only the evidence directed specifically to him. The record demonstrates that the trial court took extra care in this regard.

As the government's case proceeded further several witnesses testified as to the nature of the organization, the participation in the overall plan and work by individual defendants, the training of salesmen, and the scheme generally. This testimony and other evidence described the acts, duties, and participation of particular defendants

and all of them. At the close of the government's case the court advised the jury that the evidence received could be considered as applicable to all defendants.

The defendants' objection, in substance, is to the order of proof and lack of foundation for particular items of proof. This court has previously considered these objections in other cases brought under the mail fraud statutes. In such a scheme, the acts and declarations of each party to the scheme made in furtherance or execution thereof are admissible against all. *Beckwith v. United States*, 367 F.2d 458 (10th Cir.). *See also United States v. AMREP Corp.*, 560 F.2d 539 (2d Cir.); *Lowther v. United States*, 455 F.2d 657 (10th Cir.). Moreover, evidence of the acts and declarations of the parties' agents is similarly admissible. *Beck v. United States*, 305 F.2d 595 (10th Cir.). The defendants, however, assert that before any such evidence can be admitted as against all of them, the scheme must first be independently established. While this order of proof is preferred, we have held that it is not mandatory.

In *Beckwith v. United States*, 367 F.2d 458 (10th Cir.), three defendants were indicted for mail fraud and securities law violations. The primary organizer of the scheme, Albert Jones, pled guilty. At the trial of the other two testimony as to his acts and declarations was admitted before any evidence was received linking the two defendants with him. The trial court cautioned the jury that it could only consider the testimony if the evidence showed that the defendants were involved in a common scheme with Mr. Jones. We held:

"While testimony as to things done or said by one of the co-actors is admissible if there is evidence that the defendants were active participants in the fraudulent scheme, the court may, in its discretion, permit the proof of participation to follow evidence as to things said and done by the confederate . . . ."

In *United States v. Krohn*, 573 F.2d 1382 (10th Cir.), we again addressed the evidentiary problem. There, the defendants were

charged with operating a company engaged in the fraudulent selling of retail distributorships. The defendants asserted that damaging testimony of two of the company's employees was admitted without proper foundation. In affirming the convictions, we noted the difficulty facing the government in the order of proof in mail fraud cases. We held that the time of admission of evidence showing a pattern of fraudulent conduct is within the sound discretion of the trial court. We stated that the trial court has the discretion to admit such evidence prior to proof that the defendants were involved in the scheme so long as a foundation is subsequently laid. We cautioned that a proper foundation would require the submission of independent evidence showing each defendant's involvement with the scheme. We then concluded in *Krohn* that when a proper foundation is laid at some point in the trial, all evidence of the fraudulent scheme and conduct admitted may be considered by the jury. In *Krohn* we said:

"However, the order of proof is within the sound discretion of the trial judge. Evidence of the acts and statements of other participants in the fraudulent enterprise or their agents may be admitted prior to demonstrating participation in the scheme by the objecting defendant, so long as the foundation is subsequently laid. *Beckwith v. United States,* 367 F.2d 458, 460 (10th Cir.). In the final charge the trial court did clearly instruct the jury here as to the required foundation for consideration of such evidence against the defendants (R. IX, 10)."

In *United States v. Preston,* 634 F.2d 1285 (10th Cir.), we extended our holdings in *Krohn* and *Beckwith* to corporate employees. We held in *Preston* that in mail fraud cases, information contained in business documents can be imputed to corporate employees, not merely corporate officers, if it is shown by independent evidence that the employees were knowing participants in the fraudulent scheme. In *Preston,* we reaffirmed our previous holdings that proof of the defendants' participation in the scheme could be admitted out of order so long as a foundation was subsequently laid.

In the case before us the record shows that the foundation was established, and the trial court proceeded in accordance with the Federal Rules of Evidence and with the substance of the prevailing decisions.

 Two of the defendants also contend that the trial court erred by denying their motions for severance. We, however, find no error in such denial. The defendants also argue that their identities were confused at trial and that the jury was incapable of reaching separate determinations of guilt or innocence. However, the assertion that the jury was confused as to the identity of the defendants is speculation. There is nothing in the record to indicate any confusion. The defendants were seated at separate tables in the courtroom, they were identified by the court, and each was separately represented. Each defendant was charged with the same offense. There were occasional slips by the attorneys and by witnesses as to the names of the defendants, but these were of no consequence considering the entire proceedings.

The defendants bear a heavy burden of showing that prejudice resulted from the trial court's joinder of their cases. *United States v. Petersen,* 611 F.2d 1313, 1331 (10th Cir.); Fed.R.Crim.P. 14. We will not overturn the trial court's decision unless there has been an abuse of discretion. *United States v. Eaton,* 485 F.2d 102 (10th Cir.). The general rule for determining whether the joinder was prejudicial is set forth in *United States v. Petersen.*

We must hold that the record demonstrates that the jury could keep separate the evidence and identity of the defendants and no prejudice is indicated.

AFFIRMED.