15 F.3d 1092
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Harold LAZERMAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Danny Paul FACELLA, Defendant-Appellant.
 Nos. 92-50601, 92-50630.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 6, 1994.*
Decided Jan. 11, 1994.
 
 1
 Before: GOODWIN, HALL, Circuit Judges, and TANNER, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Harold Lazerman and Danny Facella claim that insufficient evidence exists to support their convictions for mail fraud in violation of 18 U.S.C. Sec. 1341.[1] The charges arose from appellants' participation in Investment Metals International, Inc. (INI), a telemarketing "boiler room" operation selling investments in precious metals. Lazerman was the president and sole stockholder in INI, while Facella, who was then Lazerman's stepson, supervised the daily operations of IMI's sales staff. The government presented evidence at trial demonstrating the fraudulent nature of IMI's existence. The fraud was not limited to the sales room, but rather permeated all levels of IMI. We affirm the convictions of both appellants and the sentence imposed on Facella.
 
 I.
 
 4
 Lazerman and Facella each argue that there was insufficient evidence to support their convictions for mail fraud in violation of 18 U.S.C. Sec. 1341.[2] In evaluating these claims, we review the record in the light most favorable to the government and affirm if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 5
 To establish a violation of the mail fraud statute, the government must prove: 1) the existence of a scheme or artifice to defraud; and 2) defendant's use or causing of use of the mails in furtherance of the scheme.[3] There also must be a showing of a specific intent to defraud. United States v. Lothian, 976 F.2d 1257, 1267 (9th Cir.1992). Knowledge of fraudulent purpose, as an aspect of intent to defraud, may be established by circumstantial evidence. "It is often difficult to prove fraudulent intent by direct evidence and it must be inferred in such cases from a pattern of conduct or a series of acts, aptly designated as badges of fraud. Id. (quoting United States v. Krohn, 573 F.2d 1382, 1386 (10th Cir.), cert. denied, 436 U.S. 949 (1978)). We find that the government introduced evidence of Lazerman's and Facella's conduct that amounted to "badges of fraud" sufficient to sustain their convictions.
 
 A. Lazerman
 
 6
 Lazerman readily admits that a scheme to defraud potential and actual investors existed at IMI. However, he claims there is insufficient evidence that he devised or knowingly participated in this scheme. We disagree.
 
 
 7
 The record contains evidence of Lazerman's conduct that amounted to "badges of fraud". See Lothian, 976 F.2d at 1267. He was responsible for numerous misrepresentations and engaged in several acts of concealment. Lazerman was personally responsible for hedging customer investments with IMI's physical inventory or transactions in the commodity futures markets. IMI personnel, including Lazerman, represented to customers that this was being done. RT 144-45. However, expert testimony revealed that IMI had not adequately hedged its obligations to customers. RT 1155-69. In fact, the government presented evidence that Lazerman improperly used investor funds to speculate in the market and to cover personal expenses. RT 912-913.
 
 
 8
 Lazerman was also responsible for making statements designed to lull investors into a false sense of security and postpone complaints and requests for repayment. RT 163, 292-293. See United States v. Lane, 474 U.S. 438, 452-53 (1986). Furthermore, as president and sole stockholder of IMI, Lazerman clearly "was an insider who occupied a position of responsibility". United States v. Lothian, 976 F.2d at 1268. He was, in fact, the mastermind of the whole operation. Viewing the evidence in the light most favorable to the government, a rational trier of fact could conclude that Lazerman knowingly participated in the fraudulent scheme.
 
 B. Facella
 
 9
 Unlike Lazerman, Facella does not concede that a fraudulent scheme existed at IMI. However, the crux of Facella's argument is that even if such a scheme existed, there was insufficient evidence to show that he willingly participated. We again disagree.
 
 
 10
 The government introduced evidence showing that Facella made numerous affirmative misrepresentations to IMI customers. These misrepresentations included: 1) that IMI was adequately hedged; (RT 145) 2) that IMI had a vault on the premises to hold silver; (RT 146) and 3) that IMI had been investigated by the Commodity Futures Trading Commission (CFTC) and been given a "clean bill of health". RT 323. Facella also discouraged several investors from paying off their contracts and taking actual possession of their silver. RT 84, 146. Although to a lesser extent than Lazerman, Facella did maintain a position of high responsibility at IMI. He trained and directly supervised a sales staff that the government clearly demonstrated was permeated with fraud.[4] In fact, Facella or David Gray, the other regional sales manager, had to approve any purported sale. RT 745. See United States v. Feldman, 825 F.2d 124, 128 (7th Cir.1987). We find the record contains evidence sufficient for the jury to conclude that Facella possessed the requisite knowledge and fraudulent intent to support his conviction.[5]
 
 II.
 
 11
 Facella next contends that the district court abused its discretion in sentencing him to five years in custody.[6] Facella points to Lazerman's seven year sentence and argues his own sentence is disproportionate because "his involvement in this matter did not remotely equal Lazerman's." Facella also argues that in United States v. Bentley, 825 F.2d 1104 (7th Cir.1987), cert. denied, 488 U.S. 970 (1988), salesmen in a similar "boiler room" operation received lesser sentences than five years. Facella's claim is without merit.
 
 
 12
 The imposition of disparate sentences alone normally does not constitute an abuse of discretion. United States v. Meyers, 847 F.2d 1408, 1416 (9th Cir.1988). It is within the discretion of the court to impose disparate sentences as long as the judge takes into account individual circumstances. United States v. Vaccaro, 816 F.2d 443, 458 (9th Cir.), cert. denied, 484 U.S. 914, and cert. denied, 484 U.S. 928 (1987). Here, we find the district court adequately took Facella's individual circumstances into account in determining his sentence and therefore we affirm.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Jack E. Tanner, Senior District Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Facella also appeals the district court's imposition of a five year sentence
 
 
 [2]
 The federal mail fraud statute provides, in relevant part:
 Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail ... any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both. 18 U.S.C. Sec. 1341 (1982).
 
 
 [3]
 Neither appellant seriously disputes the existence of this second element
 
 
 [4]
 The IMI sales staff made numerous misrepresentations and lies to customers, including that: 1) IMI had a vault to store the commodities; 2) IMI had a CFTC license; 3) IMI employees traded directly on an exchange floor; 4) IMI bought metal on behalf of its customers; and 5) IMI had segregated accounts for its customers
 
 
 [5]
 In urging reversal, Facella argues that he had only limited contacts with the specific recipients of the mailings. This argument fails because "Like co-conspirators, 'knowing participants in the scheme are legally liable' for their co-schemers' use of the mails...." Lothian, 976 F.2d at 1263 (citing United States v. Dadanian, 818 F.2d 1443, 1446 (9th Cir.1987), modified, 856 F.2d 1391 (1988))
 
 
 [6]
 Facella and Lazerman were both sentenced under pre-Sentencing Guideline law