**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Elijah Albert BOONE, Dehlia E. Boone, Jerry Boone and Roger Swayze, Defendants–Appellants.**

Nos. 89–30077, 89–30079, 89–30086 and 89–30087.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted, Oct. 4, 1990.

Decided Dec. 5, 1991.

Byron K. Meredith, Nampa, Idaho, for defendants-appellants Elijah Albert Boone and Dehlia Boone.

David K. Swanson, Swanson & Setzke, Boise, Idaho, for defendant-appellant Jerry Boone.

William C. Roden, Roden, Arkoosh & Riceci, Boise, Idaho, for defendant-appellant Roger Swayze.

George W. Breitsameter, Asst. U.S. Atty., Boise, Idaho, for plaintiff-appellee.

Before HUG, D.W. NELSON, Circuit Judges, and CARROLL,* District Judge.

D.W. NELSON, Circuit Judge:

Appellants Dehlia Boone and Roger Swayze were involved along with Albert and Jerry Boone in the promotion and sale of undivided interests in mining claims on Miller Mountain, located outside of Lowman, Idaho. Albert Boone was the principal promoter of their scheme to sell mining shares. Dehlia Boone maintained the companies' books and managed their finances. Jerry Boone staked the mining claims and Roger Swayze joined the Boones in 1984 to manage the office located in Boise, Idaho.

The government alleges that their scheme to sell mining shares was a scam; that the Boones and Swayze knew that the

* The Honorable Earl H. Carroll, United States District Court Judge for the District of Arizona, sitting by designation.

minerals on Miller Mountain were of no commercial value and nonetheless induced hundreds of people to invest millions of dollars in their fraudulent venture. The government presented evidence that Albert and Dehlia Boone, assisted by Roger Swayze, diverted investor money to their personal use. Later, they attempted to hide documents revealing promises of income distribution and investor records showing that the Boone entities had issued stock in violation of 15 U.S.C. § 77e(a) and § 77x. No dividends were ever distributed to investors and no commercial production or sale was ever consummated.

Albert, Dehlia and Jerry Boone and Roger Swayze were indicted in 1987 on various counts of securities fraud, mail fraud, transportation of stolen property, conspiracy, perjury and making false statements to a government agency. The government alleges that their conspiracy to sell fraudulent claims began in 1979 and continued until approximately February 1, 1987. Defendant Dehlia Boone appeals her sentence and conviction for conspiracy to commit fraud in violation of 18 U.S.C. § 371 and income tax evasion in violation of 26 U.S.C. § 7201. Dehlia Boone also appeals her convictions for interstate transportation of stolen property under 18 U.S.C. § 2314 and mail fraud under 18 U.S.C. § 1341. Albert Boone appeals his convictions for securities fraud under 15 U.S.C. § 77q(a) and § 77x, interstate transportation of stolen property under 18 U.S.C. § 2314, mail fraud under 18 U.S.C. § 1341, making a false statement to a government agency under 18 U.S.C. § 1001 and income tax evasion under 26 U.S.C. § 7201. Roger Swayze appeals his convictions for mail fraud under 18 U.S.C. § 1341, making a false statement to a government agency under 18 U.S.C. § 1001, conspiracy under 18 U.S.C. § 371 and perjury under 18 U.S.C. § 1623. Jerry Boone appeals his conviction for conspiracy under 18 U.S.C. § 371.

We affirm the District Court's conviction of Dehlia Boone on counts 36 (conspiracy), 39, 40 and 41 (income tax evasion) as consistent with the jury's verdict. We affirm Roger Swayze's conviction on count 37 for perjury, but reverse his conviction on count 38. We affirm the convictions of Albert and Jerry Boone on all counts.

## I. Dehlia Boone's Convictions on Counts 36, 39, 40 and 41

After a 19 day trial of Albert Boone, Dehlia Boone, Jerry Boone and Roger Swayze on allegations of fraud, income tax evasion, interstate transportation of stolen goods and other charges, the jury returned a verdict on December 28, 1988. The written verdict form the jurors delivered to the judge indicated that they found Dehlia Boone not guilty on counts 1 and 3–10, guilty on counts 11–15 and 17–25, not guilty on counts 27–33 and *guilty* on counts 36 and 39–41. The written verdict form was signed by the jury foreman. In open court, however, the judge read the verdict as "not guilty on Counts 1–10. Guilty on Counts 11–25. And *not guilty* on Counts 27 through 41." [1] (emphasis added). The written verdict and the oral verdict contradict each other with regard to counts 36 (conspiracy) and 39–41 (income tax evasion).

Neither counsel had a copy of the written verdict at the time the verdict was read in court. Thus, both parties were unaware of the discrepancies between the two verdicts at the time the verdict was entered.

After reciting the verdict, the judge polled the jury as a group, asking "Members of the jury, is this your true and correct verdict, so say you one, so say you

1. In reading the verdict, the trial judge indicated Dehlia Boone was not guilty on counts 27–41. In fact, she was not charged in counts 34, 35, 37 or 38. The trial judge made the same type of mistake with respect to counts 2 and 16, counts which had previously been dismissed and were not before the jury. This mistake was also made with regard to the verdict for Roger Swayze. The trial judge read that Swayze was guilty on counts 22 and 31–38, where Swayze was not charged with counts 34 and 35. The trial judge also misread the verdict for Jerry Boone, indicating he was found not guilty on counts 1–33, where he was not charged with counts 2, 16 and 26.

all?" The jurors responded, "Yes." After setting the sentencing date for March 10, 1989, the judge dismissed the jury and directed the clerk to enter the verdict.

The written verdict entered at the conclusion of that day's proceedings stated that Dehlia Boone was found *guilty* on counts 36 and 39–41. In accordance with the pre-sentence report which was based upon the written verdict, the court sentenced Dehlia Boone to two years in prison on count 36, put her on probation for five years for counts 39–41, ordered her to file and pay her income taxes and to pay the costs of prosecution for counts 39–41. She was also sentenced to two years in prison (the terms to run concurrently with the conspiracy sentence) on counts 11–15 (interstate transportation of stolen property) and 17–25 (mail fraud). Dehlia Boone's trial counsel did not raise the issue of the contrary jury verdicts at the time of sentencing.

The government argues that Dehlia Boone waived her right to appeal her conviction on these counts by not raising the issue at the time of sentencing. It contends that the pre-sentence report based on the written verdict placed defendant Dehlia Boone on notice of the discrepancy by indicating that she had been found guilty on counts 36 and 39–41.

On appeal, Dehlia Boone, represented by new counsel, claims that her sentence and conviction on these counts were plain error. She argues that it violated her rights as a defendant to be present at the reception of the verdict, Fed.R.Crim.P. 43, and to have a unanimous verdict returned in open court, Fed.R.Crim.P. 31(a). Dehlia Boone argues that she did not waive the error by failing to object below.

A. *Waiver of Right to Object to Variance in Verdicts*

Since the offenses at issue were committed prior to November 1, 1987, the effective date of the Sentencing Guidelines, the Guidelines do not apply here. United States Sentencing Commission, *Guidelines Manual*, § 1.1 (Nov. 1990). Whether Deh-

lia Boone waived her right to object to the variance in the verdicts is a question of law and is reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ The government contends that Dehlia Boone waived her right to object to the variance in the verdicts by not polling the jurors before the verdict was recorded[2] and by not raising the issue at the time of sentencing. Dehlia Boone contends that she did not request that the jurors be polled individually since the court had declared her not guilty on these counts. We note that proper procedure requires both counsel to check the written verdict as submitted to the judge against what they heard in court. This should be done as soon as possible after the verdict is read, preferably before it is entered. Had the discrepancy been discovered through such a procedure, it might have been possible to poll the jurors individually to determine which was their true verdict.

Unfortunately, the discrepancy was not discovered until much later. The government stresses that the pre-sentence report put Dehlia Boone on notice of the discrepancy and that she should have raised the issue at sentencing. However, Dehlia Boone had no legal right to ask for a jury poll at that time since the verdict had already been entered. If a poll is not requested before the verdict is recorded, the request comes too late. *See United States v. Morris*, 612 F.2d 483, 489 n. 10, 490 n. 15 (10th Cir. 1979).

Despite the fact that a request to poll the jury would have been untimely, the government presses this point, relying on *E.F. Hutton & Co. v. Arnebergh*, 775 F.2d 1061, 1064 (9th Cir.1985), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986), for the proposition that timely objection at sentencing would have avoided prejudice. *Hutton* was a civil case where the jury was

---

**2.** After the verdict is read and before it is entered, either party may move to poll the jury to see if the verdict was unanimous. Fed. R.Crim.P. 31(d).

reconvened six weeks later to clarify an ambiguous written verdict.

■ A court treads on dangerous ground when it reassembles the jurors to clarify a verdict after the trial has concluded. In *People v. Romero*, 31 Cal.3d 685, 183 Cal. Rptr. 663, 646 P.2d 824 (1982) the California Supreme Court summarized the problem with belated jury polls:

> ... in [*People v.*] *Grider* [246 Cal.App.2d 149, 54 Cal.Rptr. 497 (1966)] the miscue was caught and rectified in a matter of minutes; here, the error, if any there was, was not brought to the court's attention for almost two months. It goes without saying that in two months memories may fail, and in the interim, ex parte contact with former jurors by dissatisfied litigants may encourage jurors to falsify or invent facts.

*Id.* at 691–92, 183 Cal.Rptr. 663, 646 P.2d 824.

Dehlia Boone was sentenced approximately 3 months after the verdict was rendered. By then, the jurors' memories had probably begun to fade. By now, more than two years after the verdict was read, the trial is undoubtedly an event remembered in the haze of bygone years.

It is unfortunate that neither the parties, nor the court, discovered the error until it was too late to poll the jury. However, Dehlia Boone claims on appeal that her *conviction* on these four counts was erroneous. The issue of Dehlia Boone's guilt or innocence on these counts could not have been resolved by the district court at the sentencing. This issue is properly one for the appellate courts. Under these circumstances, Dehlia Boone did not waive her right to object to the variance in the verdict by not raising this issue at sentencing.

**B. *Which Verdict Controls—the Oral or Written Verdict?***

■ Appellants raise the legal question of which verdict controls, the oral verdict delivered in open court and affirmed by the jury, or the written verdict submitted to the judge and entered after the reading of the jury verdict. Questions of law are reviewed de novo. *McConney*, 728 F.2d at 1201.

This court has found no cases deciding the issue of which verdict controls, the written or the oral verdict, when the two contradict each other. Appellants claim that imposition of the written verdict violates Federal Rules of Criminal Procedure 31 and 43.

A defendant has the right to be present when the verdict is returned. Fed. R.Crim.P. 43(a). A verdict is returned when it is given by the jury to the judge in open court. Fed.R.Crim.P. 31(a). *See also United States v. Nelson*, 692 F.2d 83, 85 (9th Cir.1982) (in order for a verdict to be accepted, the jury must reach a unanimous verdict and "announce[ ] the verdict in open court."). Dehlia Boone was present when the jury "returned" the written verdict to the judge. The judge's misreading of the verdict does not vitiate the fact that Dehlia Boone was present when the verdict was returned.

In *Nelson*, we held that "a jury has not reached a valid verdict until deliberations are over, the result is announced in open court, and no dissent by a juror is registered." *Id.* at 84–85. Although the juror room votes, as embodied in the written verdict, form the basis of the announced verdict, the jurors remain free to dissent from the announced verdict when polled. *Id.* at 84.

The jury affirmed the verdict when the trial judge asked if "this is your true and correct verdict." The jurors could have assented to either the judge's reading of the verdict or to their written verdict. To conclude that the jury agreed with the judge's mistaken reading of the verdict, rather than the jury's written verdict, requires us to assume that the jurors unanimously changed their minds in a split second with respect to their verdicts on these four counts. It is unreasonable to expect the jurors to have corrected the judge's misreading of their verdict and to conclude that by their failure to do so have assented to the misread verdicts. This is particularly true because the jurors did not have

their verdict form in front of them while the judge read the verdict.

Dehlia Boone claims that she would have polled the jury had the trial judge stated that she was found guilty on counts 36 and 39–41. She claims that to convict her on those four counts violates her right to poll the jury to determine if the verdict was unanimous. Had Dehlia Boone been found not guilty on all counts except for the four in question, the misreading of the verdict could have denied her the right to poll the jury. However, we note that she was found guilty on fourteen other counts and she did not request a jury poll on those counts. Dehlia Boone's failure to poll the jury was not the result of the misread verdict since she had fourteen other reasons to request a jury poll.

It would elevate form over substance to find that the misread verdict was the operative verdict. The court's docket sheet, filed on the day the verdict was returned, stated that Dehlia Boone was found guilty on counts 36 and 39–41. The written verdict was the basis of the pre-sentence report and the sentencing. To conform the written verdict to reflect the misread verdict would frustrate the jury's intent and the entire jury process. *See, e.g., United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir.1990) (A court can "correct the verdict form to reflect the jury's true intent," even if the verdict is changed from not guilty to guilty.)

Dehlia Boone's conviction on counts 36 and 39–41 is affirmed.

## II. Sufficiency of the Evidence to Support Roger Swayze's Perjury Convictions

### A. *Overview*

Pursuant to counts 37 and 38 of the superseding indictment, Roger Swayze was convicted of committing perjury in his testimony to the grand jury. Swayze contests the sufficiency of the evidence on both of these counts. He also alleges that the district court erred by denying his motion to strike the second "truth" averment in count 37 of the indictment.

In reviewing a perjury conviction we apply a de novo standard of review. *United States v. Cowley*, 720 F.2d 1037, 1040 (9th Cir.1983), *cert. denied sub nom. St. Clair v. United States*, 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984). Our central task is to determine "whether the jury could conclude 'beyond a reasonable doubt that the defendant understood the question as did the government and that, so understood, the defendant's answer was false.'" *United States v. Sainz*, 772 F.2d 559, 562 (9th Cir.1985) (citing *United States v. Cowley*, 720 F.2d 1037, 1040 (9th Cir.1983)).

### B. *Sufficiency of the Evidence on Perjury Count 37*

Count 37 relates to Swayze's grand jury testimony on July 9, 1985. Swayze was subpoenaed to appear before the grand jury and to bring "all manila folders containing claimant's names, ledger cards, addresses, deeds to mining claims and location notices. Provde (sic) any other files which contain claimant's names on which there have been filings. Provide any quitclaim ddes (sic) included in any of these files." The subpoena was addressed to "Roger Swazy (sic), Industrial Minerals of Idaho."

After presenting the Grand Jury with the Industrial Minerals of Idaho (IMI) files he brought in response to the subpoena, Swayze testified that IMI was developing a mine site and that approximately 300–400 individuals had purchased interests in mining claims from three of the mining trusts. The Assistant United States Attorney asked Swayze if he was "associated either as a consultant or in any other capacity with companies that are involved in the sale of mining claims." Swayze answered in the affirmative, identifying those companies as the 706 trust, the Green Mountain Minerals Trust and the Eli–Est Trust. The U.S. Attorney questioned Swayze about the services he performed for "these three trusts," the trusts' sale of interests in mining claims, the trusts' formation and number of claim holders. The prosecutor then asked Swayze: "Have any of these trusts or business entities associated with these

trusts issued stock to any of the individuals who have purchased interests in mining claims?" Swayze answered, "No." This answer forms the basis for the government's perjury claim.

Swayze contends that the question was ambiguous in that the phrase "business entities associated with these trusts" requires further definition. He bases his argument on *United States v. Lighte*, 782 F.2d 367, 375 (2nd Cir.1986), which held that an ambiguous question cannot form the basis for a perjury conviction. In evaluating Swayze's argument about the question's ambiguity, the court must consider the context in which the question was asked, as well as the potentially ambiguous wording. *Lighte*, 782 F.2d at 375.

■ The context of the question about the issuance of stock indicated that the term "these trusts" refers to the entities about which Swayze had just testified: the 706 Trust, the Green Mountain Minerals Trust (GMMT) and the Eli–Est Trust. The government submitted evidence that Swayze knew that "those trusts" about which he had just testified, as well as IMI, had issued stock. On May 14 and June 19, 1985, FBI agents, acting in cooperation with Todd Hine, an employee of the Boone family operations who had alerted the government to the impending removal of the Boone files, microfilmed the Boone records kept in Swayze's office. Swayze culled the materials he brought to the Grand Jury from those records. A comparison of the materials Swayze brought and the microfilmed records reveals that the original records contained stock certificates from several trusts including GMMT and IMI, but Swayze failed to bring to the Grand Jury any papers referring to stock or the issuance of stock by the Boone-affiliated corporations or trusts.

The microfilm records contain a copy of a Green Mountain Minerals Trust (GMMT) stock certificate for 10,000,000 shares issued to LaRelle Grant. GMMT was one of the entities for which Swayze performed consulting work. Todd Hine testified that the GMMT files were "one of the ten corporations [files] that we purged."

Other evidence corroborates the conclusion that Swayze knew and deliberately concealed from the grand jury the fact that the trusts had issued stock. Swayze testified that he and Hine reviewed all of the Boone files to create the IMI files Swayze brought before the grand jury. During a surreptitiously taped conversation with Hine, Swayze said: "I want to go through all the people files and I want to purge 'em." Swayze's purpose was not to "tip'em off that there's been stock involved here." Swayze wanted to leave in the files "[n]othing here to suggest stock, nothing here to suggest further development of any mining, no claims, no promises of income or distribution through any kind." Swayze's testimony, Hine's testimony and the microfilm records constitute substantial evidence from which the jury could conclude that Swayze knew the GMMT stock certificate, as well as other stock certificates, were in the files and that he perjured himself when he testified that none of "these trusts" had issued stock.

■ The term "associated business entities" appears somewhat ambiguous, however. A question is fundamentally ambiguous when it "is not a phrase with a meaning about which men of ordinary intelligence could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony." *United States v. Lighte*, 782 F.2d at 375. "Precise questioning is imperative as a predicate for the offense of perjury." *Bronston v. United States*, 409 U.S. 352, 362, 93 S.Ct. 595, 602, 34 L.Ed.2d 568 (1973).

■ During the line of questioning preceding the allegedly perjurous testimony, the prosecutor questioned Swayze about whether Albert Boone was "associated" with IMI. Swayze responded that Boone was a consultant and a trustee of several different trusts. Swayze then answered questions about the activities of IMI, but did not describe IMI as "associated" with the other three trusts. No questions focused on the relationship between the three trusts Swayze consulted for, GMMT, 706

and Eli–Est, and IMI, or any other business entities. Thus, the term "associated business entities" does not appear to have a clear meaning and is ambiguous.

Although the term "associated business entities" was ambiguous, the rest of the question was clear: "Have any of these trusts *or* business entities associated with these trusts issued stock to any individuals who have purchased interests in mining claims?" (emphasis added). The disjunctive form of the question renders Swayze's "No" answer false; there is ample evidence that Swayze knew that at least one of "these trusts" had issued stock for mining claims. Although the question contains an ambiguous phrase, the form of the question and its context made its meaning sufficiently precise to form the basis for a perjury conviction. *See United States v. Lighte*, 782 F.2d at 375 (fact that some ambiguous questions were asked does not preclude a perjury conviction).

### C. *Propriety of the "Truth" Averment in Count 37 of the Superseding Indictment*

■ Next, we review whether the district court erred in denying Swayze's motion to strike the "truth" averment in count 37 of the superseding indictment. We review the sufficiency of a perjury indictment de novo. *United States v. DeCoito*, 764 F.2d 690, 693 (9th Cir.1985).

The second "truth averment" paragraph of count 37 of the indictment charges that Swayze's testimony was false because he knew that "file covers in his possession, custody and control at the time of service of the subpoena upon him had contained originals and/or copies of stock certificates issued by those legal entities to one or more individuals in violation of 18 U.S.C. § 1623." The prosecution did not ask Swayze a question about the "file covers" so counsel for Swayze asked the district court to strike the portions of the indictment relating to his knowledge of the file covers and their contents. The district court denied his motion.

Appellant claims that he was prejudiced because he "may well have been convicted

for a response to which there was no question." Swayze contends that this "truth" allegation regarding the file covers should have been stricken because it does not track the questions asked, citing *United States v. Tonelli*, 577 F.2d 194 (3rd Cir. 1978) (perjury conviction overturned because question asked differed from the statement alleged in the indictment to be false).

Under *DeCoito*, 764 F.2d at 693, there is no requirement that a perjury count contain a truth averment paragraph. The government argues that if one is included, there is no technical requirement that a truth averment directly and precisely contradict the alleged perjured testimony. *See United States v. Schmidt*, 711 F.2d 595, 597 (5th Cir.1983), *cert. denied*, 464 U.S. 1041, 104 S.Ct. 705, 79 L.Ed.2d 169 (1984).

The government contends that the truth averment paragraph explains the reasons why Swayze knew that his testimony was false. Under *Schmidt*, an indictment is sufficient if it "establishes what statements the government alleged to be false and why such was in fact the case." *Id.*

The first section of Swayze's indictment on count 37 alleges that Swayze knew that the trusts or associated business entities had issued stock. The second part explains how he gained that knowledge: through his familiarity with the files that he reviewed in response to the grand jury subpoena. In accordance with *Schmidt*, the second part of the indictment explains why Swayze's testimony was false. *See id.*

The Fifth Circuit in *Schmidt* noted that other evidence submitted at trial may establish the truth of the averments which the appellant contests. *Schmidt*, 711 F.2d at 598. Swayze acknowledges: "The jury in the present case may have found that there were file folders containing stock certificates in them." A reasonable jury could conclude that such evidence establishes that Swayze lied to the Grand Jury when he testified that he did not know whether any of the trusts he worked with or business entities associated with them had issued stock. *See Schmidt*, 711 F.2d at 598. The district court did not err in denying

Swayze's motion to strike this portion of the truth averment.

### D. *Sufficiency of the Evidence for Perjury Count 38*

▮ Swayze appeared before the Grand Jury twice, once on July 9, 1985 and once on October 17, 1986. Count 38 is based on a violation of 18 U.S.C. § 1623, perjurous testimony allegedly given before the Grand Jury in his second appearance.

During that appearance, the U.S. Attorney asked Swayze about the Grand Jury subpoena of July 1985:

Q. Do you recall the subpoena?
A. Yes.

. . . . .

Q. Did you respond to the subpoena?
A. Yes, I did.
Q. Did you provide everything that was requested on the subpoena?
A. I believe I did.

The questioning continued:

Q. Did you at any time, either acting alone, with this, Todd-whatever—
A. Todd Hine.
Q. Todd Hine, Albert Boone or any other person, go through and exact (sic) from those files, documents?
A. The files of Industrial minerals?
Q. Yes.
A. No.

. . . . .

Q. Before you brought any files to this Grand Jury—
A. Um-hmm.
Q. —did you go through and take anything out of those files?
A. No.
Q. Were those files located with any files that you believed were not the subject of the Grand Jury subpoena?
A. No.

Swayze contends that his statements were literally true because there were no files relating to Industrial Minerals of Idaho. Under *Bronston v. United States*, 409 U.S. 352, 361–62, 93 S.Ct. 595, 601–02, 34 L.Ed.2d 568 (1973), the federal perjury statute, 18 U.S.C. § 1621, does not reach a witness' answer that is literally true, but unresponsive, even assuming the witness intends to mislead his questioner by the answer. A similar standard applies to prosecutions under § 1623, false testimony before the Grand Jury, because the underlying need for truthful testimony is the same.

Hine testified that IMI investor files had not been labeled as such until after the purging. According to Hine's testimony, documents concerning IMI investors were located throughout the Boone files, but were not labeled "IMI." Thus, it is literally true that Swayze did not extract documents from *those* files, the IMI files. Although Swayze's answer is arguably misleading, the "burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Bronston*, 409 U.S. at 360, 93 S.Ct. at 601. Under *Bronston*, Swayze's truthful answer to the question which he was asked cannot form the basis of a perjury conviction. Defendant Roger Swayze's conviction on count 38 is therefore reversed.

### III. Sufficiency of the Evidence on Fraud Charges Against Albert Boone, Dehlia Boone and Roger Swayze

### A. *Standard of Review*

▮ Appellants contend that the evidence is insufficient to sustain the guilty verdicts rendered in their jury trial on the fraud charges. The court must evaluate whether the record contains enough evidence to prove their guilt beyond a reasonable doubt. In so doing, the court must determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." *United States v. Hernandez*, 876 F.2d 774, 777 (9th Cir.) *cert. denied*, 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). In its evaluation, the court must respect the exclusive province of the jury to determine credibility of witnesses. *United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir.1987).

B. *Sufficiency of the Evidence against Albert Boone on Fraud Counts*

Albert Boone was judged guilty on all counts lodged against him. Albert Boone contests eleven of the 23 fraud counts on which he was convicted. He argues that the evidence is insufficient to support his convictions on fraud charges 6, 9, 11, 13, 14, 17, 19, 21, 23, 24 and 25 because the investors decided to purchase mining claims after hearing presentations by other investors, not Albert Boone.

The evidence on count 17 indicates that Albert Boone, contrary to his argument, did make the presentation to investor Edna Molden that induced her to purchase a claim. His representations to Ms. Molden and the overall scope of the scheme, were sufficient evidence from which a jury could conclude that Albert Boone was guilty of the crime charged.

 Albert Boone contends that the evidence is insufficient to convict him of fraud on counts 9, 13, 14, 19, 21 and 25 because he did not have any contact with those investors prior to their purchase of mining claims. As evidence in support of those counts, the government submitted the testimony of several persons who solicited investment in the Boones' mining companies: Dick Gabel, Bob Hilvers and Kenny Roberts. The sales representatives testified that Boone asked them to solicit investors, offered to compensate them for their work, and provided materials for their presentations.

Under *United States v. Gibson*, 690 F.2d 697, 701 (9th Cir.1982) *cert. denied*, 460 U.S. 1046, 103 S.Ct. 1446, 75 L.Ed.2d 801 (1983), the statements of salesmen and investors are admissible to show a principal's participation in and intent regarding a scheme to defraud investors. Boone is responsible for the salesmen's statements which he expressly or impliedly authorized or ratified. *Id.* Based on the testimony of Gabel, Roberts, Hilvers and the investors who bought mining claims from them, a reasonable jury could conclude that an agency relationship existed and that Albert Boone participated in a fraudulent scheme involving these representations.

 For the other four fraud counts at issue, numbers 6, 11, 23 and 24, the government presented no evidence that Albert Boone asked the solicitors to act as his agents. Nonetheless, the government contends that by sending "lulling letters" and accepting investor money, Boone ratified the representations made by those who encouraged the investors to buy claims. Under *Gibson*, the prosecution must show that a corporate officer "expressly or impliedly authorized or ratified" the fraudulent representations of his salesmen. *Id.* The defendant's "active and knowing participation" in the fraudulent scheme is sufficient to establish ratification. *Id.*

The evidence demonstrates that Albert Boone was involved in all phases of the scheme. After investors purchased shares, the Boones sent them information about their mining claims. The Boones also sent letters regarding the status of the mining operation. These letters are substantial evidence from which the jury could conclude that Albert Boone was an active and knowing participant in a fraudulent scheme. *See id.*

 Additionally, Albert Boone's use of the funds raised for the venture for his personal benefit is probative of his fraudulent intent. *United States v. Taylor*, 832 F.2d 1187, 1194 (10th Cir.1987). The record is replete with evidence that Albert and Dehlia Boone diverted investor money for their personal use.

Pursuant to Albert Boone's request, investors made their checks payable to him and not to the mining trusts. Albert and Dehlia Boone then commingled those funds in various trust and personal accounts which they controlled. The Boones spent substantial amounts of investor funds on their two mortgages, furniture payments and other personal expenses. In light of this evidence, a reasonable jury could conclude that by accepting the investors' money and spending it for his own account, Albert Boone intended to defraud those who bought interest in the mining claims he sold. More than sufficient evidence was

presented to convict him of fraud on these counts.

### C. Sufficiency of the Evidence Against Dehlia Boone on Fraud Counts

■■■ . Dehlia Boone was convicted of nine counts of interstate transportation of stolen property and five counts of mail fraud. She contests the sufficiency of the evidence to support her conviction on these counts. Dehlia Boone basically tries to exonerate herself by laying blame on her husband. She claims that she was just "a wife who functioned in ignorance of the fraudulent schemes and acts allegedly committed by her husband."

Dehlia Boone points out that the checks underlying these counts were made out to Albert Boone or the Eli–Est Trust. For counts 19, 20 and 22, she claims that there is no evidence implicating her in the transaction. She points out that the letters from the Eli–Est Trust cited in counts 23 and 25 were signed by Albert Boone, and claims that there is no evidence that she knew of the letter in count 24 signed "The Boones."

The government paints a very different picture of Dehlia Boone. The government contends that from her attendance at investor meetings in 1981, 1982, 1983 and 1984, the jury could conclude that Dehlia knew investors expected their funds to be used for corporate purposes and nonetheless used the money for her personal benefit.

Mrs. Boone was in charge of the books of the mining corporations and trusts which handled investor funds. IRS agent Jim Peterson testified that Dehlia Boone was the signatory on the trust accounts related to the mining enterprises and on several personal accounts. Peterson analyzed the bank records and found that investor funds were commingled throughout the accounts; trust funds were transferred into the Boones' personal accounts to pay for their personal expenses.

There is substantial evidence that Dehlia Boone used money in the corporate trusts for her personal expenses. On a residential loan application where Albert Boone is listed as the borrower and Dehlia is listed as the co-borrower, the Boones listed the Eli–Est Trust as a personal asset of theirs worth $10,000,000. Dehlia Boone wrote several checks from the Eli–Est Trust account to Ben Franklin Savings and Peoples Mortgage for their mortgages. She also spent more than $10,000 at L.L. Furniture, paying for it with funds from the Eli–Est Trust or with trust money that was commingled with her personal account. The record indicates many other instances of spending corporate money for personal expenses.

A defendant's use of investor funds for personal expenses is probative of her knowledge of the existence of a fraudulent scheme. See United States v. Taylor, 832 F.2d at 1194. A reasonable jury could infer from Dehlia Boone's free spending of the investor's money that she knew of the fraudulent intent of the mining venture. This is sufficient evidence upon which to base her conviction for mail fraud.

Dehlia Boone's conviction is also supported by the letters she wrote to investors confirming receipt of funds and promising that claims would be properly assigned. Especially when considered with the evidence regarding Dehlia Boone's free spending of investor funds, a reasonable jury could infer that these letters were part of a fraudulent scheme designed to ease the investors' fears about the lack of profits and encourage further investment.

Additionally, there is convincing evidence that Dehlia Boone tried to hide corporate records which suggested fraud. FBI agents surreptitiously taped a conversation involving Swayze, Todd Hine and the Boones. Swayze, unaware that he was being taped, said that Dehlia Boone had asked for all the old [computer] disks to make sure they didn't "fall in the wrong hands." Swayze assured Mrs. Boone that he had wiped out everything on the disks. Later on the tape, Swayze told Albert and Dehlia that they had purged the files and were pulling information regarding the mineral assays and the issuance of stock. The tape shows that Albert and Dehlia Boone approved of and encouraged the purging.

Based on Dehlia Boone's knowledge of Albert Boone's representations to the investors, her position as bookkeeper for the mining corporations, her spending of investor funds, and her encouragement of attempts to hide evidence of wrongdoing, there was ample evidence from which a reasonable jury could conclude that she transported stolen property and engaged in mail fraud in furtherance of this scheme.

### D. Sufficiency of the Evidence Against Roger Swayze on Fraud Counts

Swayze argues that the evidence is insufficient to support his conviction on count 22 for mail fraud. The count is based on Swayze's acts in preparing two letters in the fall of 1984 requesting investors to remit $100 per claim for annual assessment work. The letter states that the fees were needed to pay Barry Murray and others who provided assessment services to the corporation. Swayze drafted the letters for Albert Boone's signature after discussing with him what they should say. Swayze also sent letters to investors confirming the receipt of their assessment fees.

To sustain its burden of proof on this count, the government must establish that the defendant was a knowing participant in a fraudulent scheme that utilized the mails. *United States v. Diggs*, 649 F.2d 731, 736 (9th Cir.), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981). Swayze argues that the evidence does not establish that the requests for investor payments for assessment fees were part of a fraudulent scheme.

Swayze bases his argument on the testimony of Terry Maley from the Bureau of Land Management (BLM) that the law requires $100 of assessment work per claim be done each year. He claims that the government introduced no evidence that more than $100 per claim was received as a result of the letter Swayze prepared requesting such payments.

Swayze's argument misses the point. The government's fraud allegations on this count are not based on whether the corporation could legally ask for $100 per claim, but on allegations that Swayze knew the mining claims and assessment fee requests were part of a fraudulent venture.

There is substantial evidence that Swayze helped divert the assessment fees to the Boones' personal use. As a result of a lawsuit filed in the Spring of 1984 by a group of investors, a default judgment was entered against the Boones and one of their bank accounts was garnished. Swayze agreed with the Boones to open an account in the name of R.D. Consultants into which the Boones could make deposits and from which Swayze would make disbursements on their behalf.

Contrary to the stated purposes for the assessment fee, Swayze never paid Barry Murray for any assessment work. Swayze admits that instead he wrote a series of checks for the Boones' personal expenditures. The funds for these expenditures came from the investors. As evidence of the diversion of funds, the government submitted copies of two checks that Swayze wrote on the R.D. Consultants account to Carol's Design House for Dehlia Boone's furniture account. One check is dated November 3, the other November 27.

On November 4, Swayze sent a letter to investor Churchill confirming receipt of his assessment fee. The November 4 confirming letter forms the basis for Swayze's conviction on count 22 for mail fraud. Letters mailed after the defrauders receive their money may be evidence of the existence of a fraudulent scheme. *See United States v. Brutzman*, 731 F.2d 1449, 1454 (9th Cir.1984). The letter demonstrates that Swayze represented the assessment fees to be for one purpose while using those monies for another purpose—paying for the Boones' personal expenses.

Sufficient evidence was presented from which the jury could conclude the assessment fees were collected for fraudulent purposes. A reasonable jury could conclude that the government met its burden of proving that the defendant was a knowing participant in a fraudulent scheme that utilized the mails. *United States v. Diggs*, 649 F.2d at 736.

## IV. Admission of Evidence of Albert Boone's Contact with an Undercover FBI Agent

Albert and Dehlia Boone contend the trial court abused its discretion in admitting tape recordings of conversations between Albert Boone and an undercover FBI agent. In September 1985, Todd Hine introduced FBI agent Jon Munis to Albert Boone. Munis posed as a potential investor in Miller Mountain. A tape recording of a sales presentation Albert Boone gave the agent was admitted over the defendants' objection and played for the jury.

The Boones contend that the tape was inadmissible as character evidence under Federal Rule of Evidence 404(b) and was submitted solely to establish that Albert Boone's conduct in 1985 was in conformity with his conduct between 1980 through 1985. They also contend that its prejudicial effect outweighed its probative value. Trial court decisions to admit evidence are reviewed for abuse of discretion. *United States v. Polizzi*, 801 F.2d 1543, 1555 (9th Cir.1986).

Admissibility of this evidence does not hinge on Rule 404(b) because it is direct evidence of Albert Boone's involvement in the conspiracy. *United States v. Vaccaro*, 816 F.2d 443, 452 (9th Cir.), *cert. denied sub nom. Alvis v. United States*, 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220 (1987). The tape may be admitted against Dehlia Boone as direct evidence of an alleged co-conspirator's statements relating to the scheme. *Vaccaro*, 816 F.2d at 452. In any event, the evidence was clearly admissible under Rule 404(b) as proof of a plan or scheme or to show modus operandi. *Id.* The district judge did not abuse his discretion in admitting the recording for the jury's consideration as evidence relevant to the conspiracy count and as evidence of the defendants' participation in the scheme.

In addition to the 1985 sales pitch tape, the government submitted evidence of another "pitch" Boone made in 1981. The Boones contend that the 1985 evidence was "cumulative, confusing and a waste of time" in light of the 1981 tape which had already been admitted into evidence.

The later tape establishes that the scheme continued until at least 1985. This date is relevant since the conspiracy is alleged to have continued through 1987. Taken together the two tapes show a plan spanning several years to sell mining shares, and also demonstrate Boone's solicitation method. The evidence was properly admitted under Rule 404(b) as proof of a plan or scheme or to show modus operandi. *United States v. Bailleaux*, 685 F.2d 1105, 1109–10 (9th Cir.1982).

Defendants also argue that the tape's prejudicial effect outweighs its probative value because it is evidence of another uncharged offense. Considering the purposes for which the evidence was admitted and that the jury was already evaluating evidence of similar acts, the district did not abuse its discretion in determining that the tape's probative value outweighed its prejudicial effects. *See Polizzi*, 801 F.2d at 1555.

## V. Sufficiency of the Evidence to Convict Albert and Dehlia Boone of Income Tax Evasion

Counts 39, 40 and 41 of the indictment allege that Albert and Dehlia Boone evaded income tax for the years 1981, 1982 and 1983 by failing to file a return and to pay income tax and by channeling their money through various trust and corporate accounts which they applied to their personal use. Albert and Dehlia Boone contend that the evidence was insufficient to support their conviction on these counts.

In support of the income tax evasion allegations, the government introduced the following evidence:

1. Investor proceeds of approximately 2.2 million dollars were received for the years 1981–1983.

2. The proceeds from the investors were deposited and commingled into several bank accounts which Albert and Dehlia Boone controlled.

3. The bank accounts for the investor proceeds were maintained in various corporate and trust names.

4. During the years 1981, 1982 and 1983, Albert and Dehlia Boone withdrew *at least* the following amounts for personal expenditures: $69,745.01; $218,245.21; and $269,299.38, respectively.[3]

5. The IRS' collection efforts were frustrated by Albert and Dehlia Boone commingling investor proceeds with personal expenditures; depositing monies into various bank accounts maintained in corporate and trust names; extensive use of cash transactions; and offsetting deposits to obtain cash directly from investor proceeds.

The Boones contend that the evidence is insufficient to prove that money was channeled through trusts and corporations to evade tax. As discussed with regard to the fraud counts, substantial evidence was introduced relating to the Boones' commingling and spending investor monies. It is reasonable for the jury to infer from this evidence that one purpose of their commingling was to evade the payment of income taxes. This inference is particularly strong since the record also shows that the Boones failed to file any income tax returns for those years.[4]

Albert and Dehlia Boone admit that they failed to file income tax returns for those years, but argue that the evidence of diversion would only be relevant if they had filed returns. The law of the Ninth Circuit suggests otherwise. The use of family trusts and cash transactions in a business is sufficient to establish an affirmative act of evasion. *United States v. DeTar*, 832 F.2d 1110, 1114 (9th Cir.1987). The evidence of income diversion is admissible to establish income tax evasion, regardless of whether or not the Boones filed a return. More than sufficient evidence was presented to sustain Albert and Dehlia Boone's conviction on the income tax evasion charges.

## VI. Failure to Instruct the Jury on a Lesser Included Offense

Albert and Dehlia Boone argue that the government brought the "wrong tax charge" by indicting them on income tax evasion instead of failure to file. On appeal, they contends that the jury should have been instructed on the lesser included offense of failure to file income taxes under 26 U.S.C. § 7203.

A review of the record shows that the Boones submitted two pre-trial jury instructions concerning income tax evasion. One instruction sets out the elements necessary to find them guilty of the offense of income tax evasion. The other defines the element of "deliberateness" inherent in the crime. Neither before nor at trial did they request an instruction on failure to file, nor lodge an objection on that instruction's omission. Where there was no request for a jury instruction or objections to the instructions given, we review the instructions given for plain error. *United States v. Loya*, 807 F.2d 1483, 1493 (9th Cir.1987).

The misdemeanor of willful failure to file an income tax return is a lesser included offense of the felony of willful attempt to evade or defeat income taxes. *United States v. Cook*, 505 F.2d 659, 664–65 (5th Cir.1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975). Had the defendants asked for an instruction on the lesser included offense they would have been entitled to it. *See Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965).

Where no objection was raised to a jury instruction at trial, reversal would be warranted only for plain error which resulted in substantial prejudice. *United States v. Appoloney*, 761 F.2d 520, 522 (9th Cir.), *cert. denied*, 474 U.S. 949, 106 S.Ct. 348, 88 L.Ed.2d 296 (1985). We have held that the court's failure to sua sponte instruct on a lesser included offense is not plain error. *United States v. Lone Bear*, 579 F.2d 522,

---

**3.** Only expenses that were clearly personal were included in these figures. Giving the defendants the benefit of the doubt, all other expenditures were considered business expenses including a substantial number of cash transactions.

**4.** The court notes that the Boones were not charged with the crime of failing to file income tax returns.

523–24 (9th Cir.1978). "In light of the appellant's failure to request such an instruction, the omission must be considered a matter of trial strategy and not error." *United States v. Meyers*, 443 F.2d 913, 914 (9th Cir.1971). Plain error was not committed by the failure to instruct on the lesser included offense of failure to file.

VII. Allegation of Willfulness in Income Tax Evasion

Count 41 of the indictment charged Albert and Dehlia Boone with income tax evasion. The necessary elements of the offense of income tax evasion under 26 U.S.C. § 7201 are (1) willfulness, (2) existence of a tax deficiency, and (3) an affirmative act constituting an evasion or attempted evasion. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965). The Boones allege that count 41 was insufficient because it failed to allege that they attempted to "evade tax." They also contest the government's amendment of the indictment to add a specific allegation of income tax evasion on the grounds that the amendment constituted a material alteration of the indictment.

■ We examine the sufficiency of an indictment de novo. *United States v. Benny*, 786 F.2d 1410, 1414 (9th Cir.), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986). An indictment's sufficiency is measured by determining: (1) whether it contains the necessary elements of the crime alleged, (2) whether it informs the defendants of the crime charged with sufficient clarity to allow them to adequately defend against the charges, and (3) whether it is stated with sufficient clarity to bar subsequent prosecution for the same offense. *United States v. Buckner*, 610 F.2d 570, 573 (9th Cir.1979) *cert. denied*, 445 U.S. 961, 100 S.Ct. 1646, 64 L.Ed.2d 235 (1980).

■ As initially worded, the indictment recites that Albert and Dehlia Boone had enough taxable income to require them to file a return, that taxes were due on that income and that knowing this Albert and Dehlia Boone "did wilfully attempt to evade and defeat the United States of America for said calendar year, in the following ways ... all in violation of Title 26, United States Code, Section 7201." The Boones contend that the indictment was deficient because it did not allege that they attempted to evade and defeat *the said income tax due and owing* to the United States of America.

Nonetheless, the indictment contains all of the necessary elements. It alleges the existence of a tax deficiency, affirmative acts constituting evasion and that the defendants wilfully committed these acts allegedly constituting evasion. It concludes by stating that these acts violated 26 U.S.C. § 7201, the income tax evasion statute. The indictment is clear: the activity with which it charges the Boones is wilful evasion of income taxes by certain affirmative acts. Although it does not use the words "wilfully attempted to evade and defeat the tax owing to the United States of America," the context makes it crystal clear that the defendants are charged with income tax evasion. The indictment provides sufficient notice of the charges confronting the defendants and is drawn with sufficient specificity to foreclose further prosecution upon the same facts. *Id.*

Albert and Dehlia Boone's allegation that the amendment constituted a material change is without merit. The amendment merely stated the obvious, that the Boones were charged with evading taxes. The trial court properly denied the motion to dismiss count 41 and did not commit prejudicial error in allowing the government's amendment.

VIII. Sufficiency of the Evidence to Support the Convictions of Jerry Boone, Dehlia Boone and Roger Swayze for Conspiracy

Albert Boone, Dehlia Boone, Jerry Boone and Roger Swayze were indicted in count 36 for conspiracy. On appeal, we review Jerry Boone's, Dehlia Boone's and Roger Swayze's contentions that the evidence was insufficient to support their conspiracy convictions. Albert Boone does not appeal his conviction on this count. We review the evidence in the light most favorable to the

government to determine if a reasonable jury could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged. *United States v. Hernandez*, 876 F.2d 774, 777 (9th Cir.), *cert. denied*, 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989).

Jerry Boone, Dehlia Boone and Roger Swayze were convicted of conspiring to commit securities fraud and mail fraud, and of engaging in a conspiracy to transport stolen property across state lines and to make false statements to a government agency. The indictment alleged 33 overt acts in furtherance of the conspiracy. The verdict form reflects that the jury found Jerry Boone, Dehlia Boone and Roger Swayze guilty of conspiracy and that they committed overt act 31 underlying that count.

■■■ Conspiracy is established when there is an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose. *United States v. Monroe*, 552 F.2d 860, 862 (9th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1069 (1977). Once the existence of a conspiracy is established, evidence which establishes beyond a reasonable doubt that a defendant is even slightly connected with the conspiracy is sufficient to convict him of knowing participation in the conspiracy. *United States v. Dunn*, 564 F.2d 348, 357 (9th Cir.1977). For a conspiracy conviction, "the prosecution need not show the agreement to have been explicit. An implicit agreement may be inferred from the facts and circumstances of the case." *United States v. Hernandez*, 876 F.2d at 777.

■■ The overt act supporting the conspiracy conviction involved the recording of a quitclaim that conveyed five claims on Miller Mountain from Albert Boone to La-Relle Grant. Grant paid over $70,000.00 for eight claims on Miller Mountain. The deed representing the overt act was for her final investment and was filed with the county recorder on May 22, 1985. Roger Swayze notarized Albert Boone's signature on the deed.

The government contends that the filing of the quitclaim deed on May 22, 1985 illustrates the defendants' attempts to milk more investors of their money "when it was obvious there was no intent to mine Miller Mountain and some investors had sued the Boones." The government argues that this investment demonstrates how each defendant had a critical role in the fraudulent scheme.

The evidence shows that the Boones acted as a team in defrauding investors. Albert Boone was the primary promoter. Jerry Boone showed investors how to pan for gold and the location of their claims on the mountain. He also staked the claims so the Boones could say they had filed with the Bureau of Land Management. He diverted investors' attention away from production on Miller Mountain. Among other things, he operated a "Vardex" machine to process minerals from black sand at the annual investors meeting on April 2. Jerry Boone was supposedly running the machinery on the mountain but when investor Dick Gabel visited the site several times, he never saw the machine in operation or anyone at the processing center. A reasonable jury could conclude from this evidence that Jerry Boone knew that no mining production was in process, that the claims had little value and that he was an active participant in a conspiracy to defraud the investors.

Jerry Boone's knowledge of the scope of the operation is evidenced by his reaction at an investors meeting he attended in January 1984 in Portland, Oregon. Investors confronted Albert Boone at this meeting asking what had happened to their money (over $2 million at this time). Albert responded "it's just none of your damn business." Jerry Boone, a trustee of some of the entities involved, did not refute this statement. A reasonable jury could conclude from his silence that he was aware of the true nature of the investment scheme and conspired to keep the investment dollars flowing. Sufficient evidence was presented to establish Jerry Boone's connection to the conspiracy. *Dunn*, 564 F.2d at 357.

Dehlia Boone attended several investor meetings and was aware of Albert's mis-

representations to those who purchased claims. Dehlia Boone "lulled" investors by suggesting that Albert was selling too many of the family's claims and provided the paper work a legitimate operation would require. Dehlia Boone also freely spent investor money for her personal benefit and encouraged attempts to hide evidence of the fraud. A reasonable jury could conclude that at the time they sold the last claim to LaRelle Grant, Dehlia Boone was aware of the fraudulent scheme and actively participated in its perpetration. *Dunn*, 564 F.2d at 357.

Roger Swayze, was an active participant in the fraudulent scheme by May 1985 when LaRelle Grant bought her shares. Swayze's correspondence to investors and potential investors reflects his knowledge of the scheme. In these letters, Swayze represented himself as the office manager and tried to placate worried investors.

Swayze furthered the continuation and concealment of the fraudulent scheme by purging investor records. He also opened a bank account and wrote checks for the Boones' personal expenses to circumvent a court judgment from the Gabel lawsuit. The jury was entitled to infer from this evidence that Swayze knew of and had agreed to participate in the conspiracy. *See id.*

The evidence is sufficient to uphold the conspiracy convictions of Jerry Boone, Dehlia Boone and Roger Swayze.

IX. Sufficiency of the Evidence Against Albert Boone and Roger Swayze of False Statements to a Government Agency

■ Counts 31, 32 and 33 charge Albert Boone and Roger Swayze with making false statements to a government agency in violation of 18 U.S.C. § 1001. Boone and Swayze contend that the evidence is insufficient to support their conviction on these counts.

The documents that are the subject of the offense are location notices filed on November 16, 1984 with the Bureau of Land Management. These location notices transferred all of the interest in a 160 acre mining claim to the persons named on the mining claim. Roger Swayze prepared the notices at the direction of Albert Boone.

Counts 31–33 allege that the defendants filed and recorded location notices for Rick and Karen Reed, Donald Collins, Richard Gabel, Clark Hazelwood, Blake Lambert, Ron Prettyman, Patrick Braun, Susan Standyke, Charles and Marian Taley, Harvey and Myrna Johnson and Joseph Johannesen without authority to do so. The Boones contend that these investors had given them powers of attorney authorizing these filings.

The government contends that the investors who were participating in the lawsuit against the Boones revoked their powers of attorney in the demand letter served on Dehlia Boone on January 27, 1984. The government also contends that the investors whose names appeared on the location notices had no knowledge that their names were used for this purpose. Based on the filing of these location notices without the authorization of the named individuals, the government alleges that Swayze and Albert Boone made a false statement to the federal government.

Proof of five elements is essential to sustain a conviction for this offense under 18 U.S.C. § 1001: a statement, falsity, materiality, specific intent, and agency jurisdiction. *United States v. Lange,* 528 F.2d 1280, 1287 (5th Cir.1976). The statute applies to the making of false statements, including positive statements, which substantially impair the basic functions entrusted by law to a government agency. *United States v. Krause,* 507 F.2d 113, 117–18 (5th Cir.1975). The defendants claim that none of the essential elements of the offense has been proven.

The statements at issue are those made in the allegedly false mining claims. To establish jurisdiction under 18 U.S.C. § 1001, it is only necessary that the statement relate to a matter in which a federal agency has power to act. *United States v. Green,* 745 F.2d 1205, 1208 (9th Cir.1984), *cert. denied,* 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985). The BLM has since

1976 been required by federal law to record the location notices. The BLM's power to act upon those location notices satisfies the jurisdiction requirement.

The materiality requirement of a Title 18, Section 1001 violation is satisfied if the statement is capable of influencing or affecting a federal agency. *United States v. Duncan*, 693 F.2d 971, 975 (9th Cir.1982), *cert. denied*, 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983). The false statement need not have actually influenced the government agency. *United States v. Green*, 745 F.2d 1205, 1208 (9th Cir.1984), *cert. denied*, 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985).

The government argues that the location notices were material to the BLM because they were used to maintain a chain of title to the claim. William Sackman, the land law examiner for the BLM testified that the location notices form a data base that notifies the BLM and the public of who has asserted mining claims on federal land and how to contact those claimants. Sackman testified that federal land managers engaged in timber sales, exchanges and the establishment of wilderness areas rely on this information in taking action on federal lands. From this testimony, a reasonable jury could conclude that there was sufficient evidence to establish that the location notices could affect the government's actions and thus were material to the BLM.

Appellants' central challenge to this charge is that the statements made in the location notices were not false. Boone argues that the notices do not assert that the persons named therein have authorized the location of mining claims in their names. Swayze contends that the location filing is equally valid whether or not it is authorized or ratified.

Terry Maley, Branch Chief of Mining Law of the BLM testified that under the 1892 mining law, someone who has discovered commercially valuable minerals must file a location notice in order to claim a right to mine there. The claimant must fill out a location form describing where the claim lies, the date of the location, the names of the locators and the type of claim made. This document initiates the title to the mining rights. Idaho law requires that the document be sworn under oath, filed and recorded with the BLM and then recorded with the courthouse.

A person cannot be said to have "located" a mining claim if she is not even aware of its existence. Locators must be actual bona fide locators who have staked claims in conformity with the law. *Cook v. Klonos*, 164 F. 529 (9th Cir.1908). By swearing under oath to the statements contained in the location notices, appellants falsely represented to the government that the statements contained therein were true— that the named individuals had located or given their authorization to locate a claim. A reasonable jury could conclude from this testimony that the appellants made a false statement by naming as locators persons who were unaware of the claim.

Other evidence showed that Roger Swayze wrote letters to investors in the Fall of 1984 regarding the lawsuit by a group of investors including Gabel. A reasonable jury could have inferred from this correspondence that Swayze and Boone knew that certain investors had revoked their powers of attorney, and thus were not people for whom he could stake claims. Swayze testified that he did not know if the investors had given powers of attorney authorizing the filing of location notices and that he was not in charge of such documents. The jury was entitled to weigh the credibility of the witnesses and the evidence to conclude that Swayze and Boone knew that the use of these investors' names was not authorized and that they had intentionally filed false claims. *See Hernandez*, 876 F.2d at 777; *United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir.1987).

There was sufficient evidence to establish each essential element of the charged offense.

X. Conclusion

Dehlia Boone's conviction on counts 36, 39, 40 and 41 is AFFIRMED. Roger

Swayze's perjury conviction for count 37 is AFFIRMED. Roger Swayze's perjury conviction for count 38 is REVERSED.

The convictions of Albert Boone, Dehlia Boone and Roger Swayze on fraud charges are AFFIRMED. Albert and Dehlia Boone's conviction on income tax evasion is AFFIRMED. Jerry Boone's, Dehlia Boone's and Roger Swayze's conspiracy convictions are AFFIRMED. Albert Boone's and Roger Swayze's convictions for false statements to a government agency are AFFIRMED.

THE MANDATE SHALL ISSUE FORTHWITH.